**UNITED STATES of America,
Plaintiff-Appellee,**

v.

**Billy Gene MAXWELL and Robert Dale
Mobley, Defendants-Appellants.**

**No. 73–1668
Summary Calendar.***

United States Court of Appeals,
Fifth Circuit.

Oct. 1, 1973.

* Rule 18, 5 Cir.; see Isbell Enterprises, Inc. v. Citizens Casualty Company of New York et al., 5 Cir. 1970, 431 F.2d 409, Part I.

Jerry H. Center, Oxford, Miss. (court appointed), for defendants-appellants.

H. M. Ray, U. S. Atty., Alfred E. Moreton, III, Will R. Ford, Asst. U. S. Attys., Oxford, Miss., for plaintiff-appellee.

Before WISDOM, AINSWORTH and CLARK, Circuit Judges.

PER CURIAM:

Billy Gene Maxwell and Robert Dale Mobley appeal from their convictions for possession of a sawed-off shotgun not registered in the National Firearms Registration and Transfer Record, in violation of 26 U.S.C. § 5861(d) (1970). They complain of the admission into evidence of the shotgun seized during a search of their truck, and of the introduction of certain statements they made to Treasury Department agents. We affirm.

The events involved occurred in a trailer park in Grenada, Mississippi, on September 13, 1972. In the early evening on that date, one Jack Williams received a threatening telephone call from a caller, at first unknown to him, who identified himself as Billy Maxwell. Maxwell wanted to know why Williams had beaten his sister, Ann Williams. Williams hung up the telephone. Thirty minutes later Maxwell called again and invited Williams to come to a certain motel where Maxwell "would beat the hell out of him." Williams's wife, disturbed by the calls, telephoned the police. Shortly after the second call to Williams, Mobley and Maxwell appeared at the home of Williams's mother, in the Grenada trailer park, where Williams and his wife were visiting at the time. As the men got out of their truck, Williams's wife saw them put something she believed to be a gun under the front seat of the truck. She called

the police a second time asking them to "please hurry up."

The police arrived at the trailer park shortly after Maxwell and Mobley. While one police officer questioned the defendants, another stood talking with Mrs. Williams beside the defendants' truck. Mrs. Williams asked one of the officers to "look in the truck and get that gun out before they let him go." The officer refused to do this, and told Mrs. Williams that she could not search the truck either. "Lady, you can't do that," he said. Ignoring this admonition, Mrs. Williams entered the truck and came out with a .22-caliber pistol. While the truck door was open and its interior light on, the police officer could see inside the truck. He saw shells on the seat and a few inches of the barrel of a shotgun protruding from underneath the front seat of the truck. He reached into the truck and seized the shotgun.

 The seizure of the shotgun was not unlawful. To begin with, there was no constitutional problem with Mrs. Williams's actions. The fourth amendment does not apply to searches and seizures conducted by private parties. See, e. g., United States v. Blanton, 5 Cir. May 30, 1973, No. 72–3348. Mrs. Williams could not in any way be said to have been acting as the officer's "agent" in searching the truck; indeed, her action directly contravened the officer's instructions. Nor is there any constitutional objection to the officer's action. When an officer is in a place where he has a right to be, he may lawfully seize any evidence, contraband, or dangerous items in "plain view." Harris v. United States, 1968, 390 U.S. 234, 88 S.Ct. 992, 19 L.Ed.2d 1067. See United States v. Looney, 5 Cir. 1973, 481 F.2d 31, in which officers inadvertently discovered a gun in plain view in a bedroom while conducting a cursory security search after making a lawful arrest in a house.

The second issue the appellants raise concerns the introduction of certain statements made in the course of their interrogation by federal authorities.

Two Treasury Department agents, accompanied by a deputy sheriff of Grenada County, questioned the defendants at the defendants' home on the day following the incidents at the trailer park. The defendants were not then in custody, but the agents nevertheless took care to advise them of their rights. The defendants told the agents that they had innocently borrowed the shotgun so that they could kill snakes while they were preparing a deer feeding plot. They refused, however, to disclose the identity of the person from whom they had borrowed the gun.

The defendants did not object to the admission of these statements prior to trial. They first made their objection when the Government sought to introduce the statements at trial. The trial judge then held a voluntariness hearing out of the presence of the jury. The defendants contended that the deputy sheriff who was later to accompany the Treasury agents during the questioning had spoken with them four or five hours before the agents had come to their home. They said that the deputy had told them that "it would be best, you know, probably wouldn't be anything to it, just go ahead and tell these men, you know, everything that happened in detail and just be truthful to them." The deputy sheriff had not been called to testify at trial. He was therefore unavailable to testify at the voluntariness hearing when the defendants had raised their objection during the trial.

 The trial judge was not in error in allowing the agents to testify as to the statements the defendants made. The trial judge complied with the provisions of 18 U.S.C. § 3501 (1970) by holding a voluntariness hearing outside the presence of the jury and by subsequently allowing the jury to hear testimony going to the issue of voluntariness.

 The trial court's finding of fact, including its credibility determinations, on the question of the voluntariness of the statements must be sustained on appeal unless "clearly erroneous," e. g.,

United States v. Montos, 5 Cir. 1970, 421 F.2d 215, 219 n. 1, cert. denied, 397 U.S. 1022, 90 S.Ct. 1262, 25 L.Ed.2d 532. As the Supreme Court recently reiterated in Schneckloth v. Bustamonte, 412 U.S. 218, 93 S.Ct. 2041, 36 L.Ed.2d 854, 1973:

> "The ultimate test remains that which has been the only clearly established test in Anglo-American courts for two hundred years: the test of voluntariness. Is the confession the product of an essentially free and unconstrained choice by its maker? If it is, if he has willed to confess, it may be used against him. If it is not, if his will has been overborne and his capacity for self-determination critically impaired, the use of his confession offends due process.

> "In determining whether a defendant's will was overborne in a particular case, the Court has assessed the totality of all the surrounding circumstances—both the characteristics of the accused and the details of the interrogation."

Thus in United States v. Bailey, 468 F.2d 652, 655, 660 (5th Cir. 1972), aff'd on reh. en banc, 480 F.2d 518, 5th Cir., 1973, where the trial court found as a fact that a police officer had "pled with appellant to give himself up if he was guilty, saying it would be better for all concerned if he would do so" and the appellant thereupon went and confessed to FBI agents after being fully advised of his rights, this court sustained the admission of the confession. We said:

> "But from the totality of the circumstances found to have occurred in the instant case, we are unable to say that appellant's confession was involuntary as a matter of law due to psychological coercion."

■ Here it is significant that the statements the defendants made to the agents did not differ materially from their testimony on the merits when they took the stand. They pitched their defense on their story of having borrowed the guns to kill snakes; argued that they should not be punished for an innocent mistake; and pointed to their cooperation with the agents as evidence of their story. The jury exercised its prerogative of not believing the defendants. Their statements were neither erroneously admitted nor prejudicial.

The judgment must be affirmed.