UNITED STATES of America,
Plaintiff-Appellee,

v.

Roberto VASQUEZ and Ernesto Chavez-
Cortinas, Defendants-Appellants.

No. 75–3623.

United States Court of Appeals,
Fifth Circuit.

July 9, 1976.

Joseph A. Calamia, Charles Michael Mallin, El Paso, Tex., for Vasquez.

Sam Dwyer, Alice Dwyer (Court-appointed), El Paso, Tex., for Chavez-Cortinas.

John Clark, U. S. Atty., San Antonio, Tex., William B. Hardie, Jr., Asst. U. S. Atty., El Paso, Tex., for plaintiff-appellee.

Before THORNBERRY and AINSWORTH, Circuit Judges, and HOFFMAN *, District Judge.

THORNBERRY, Circuit Judge:

Appellants Roberto Vasquez and Ernesto Chavez-Cortinas challenge their convictions for conspiracy to possess marijuana with intent to distribute and for possession of marijuana with intent to distribute. See 21 U.S.C. §§ 841(a)(1), 846. Appellant Vasquez contends that his confession following his arrest, which was introduced against him in the court below, was inadmissible on two grounds: first, the confession was the fruit of an illegal arrest and detention, and second, the confession lacked the requisite degree of voluntariness. Appellant Vasquez contends also that certain testimony given in the trial court violated his rights under Bruton v. United States, 391 U.S. 123, 88 S.Ct. 1620, 20 L.Ed.2d 476 (1968). With the discussion that follows, we reject these arguments and affirm the convictions of appellant Vasquez. Appellant Chavez-Cortinas, on the other hand, concedes the propriety of his conviction under section 841(a)(1) for possession of marijuana, but he argues that the Government introduced insufficient evidence to link him as a participant in a conspiracy chargeable under section 846. A commonsense review of the evidence introduced by the Government convinces us, however, that sufficient evidence was before the jury to sustain its verdict against appellant Chavez-Cortinas on the conspiracy count. Accordingly, we affirm also his convictions under sections 841(a)(1) and 846.

In the early morning hours of February 26, 1975, Customs Patrol officers Gary Epps and Kenneth Wright were on still watch in the Balluco Arroyo area west of Esperanza, Texas. The area is a known entrance and exit point across the Rio Grande River, the international boundary between the United

* District Judge of the Eastern District of Virginia, sitting by designation.

States and Mexico. At approximately 1:30 a. m., the officers observed automobile headlights approach their position from the direction of the river, then move up the west access road of Balluco Arroyo, and finally turn onto Farm Road 192 in a westward direction. With their automobile headlights turned off, but riding under a full moon, the officers commenced to follow the interloper along Farm Road 192 at a distance sufficient to prevent detection. After travelling three or four miles in this manner, the officers rounded a curve in the road. At this time, Epps and Wright, who had been decreasing steadily the distance between themselves and the interloper, were able to identify the latter as a green and white Ford van. Officer Epps testified also that, as he and his partner rounded the curve into Esperanza, the Ford van "appeared to meet" two other vehicles, a green Dodge van and a gold Oldsmobile Toronado, both of which stopped in the middle of the road to make a U–turn and follow the Ford van in its westward direction. As they came around the curve, it was necessary for the officers to switch on their automobile headlights, swing wide around the Toronado and the Dodge van both stationary in the middle of the road, and continue their pursuit of the Ford van, which had already passed the Toronado and the Dodge van. Alerted to the presence of an unknown automobile, the Ford van accelerated rapidly, and a high-speed chase ensued between the Ford van and the officers. The Ford van failed to negotiate a curve leading up to Interstate 10, the highway to El Paso, and rolled over an indeterminate number of times. As the officers came upon the scene of the crash, they observed a large amount of marijuana scattered over the road and one subject—a young male with long black hair and wearing a green fatigue jacket—running into the brush away from the demolished van. The fleeing subject turned out to be appellant Chavez-Cortinas, who was apprehended several hours later in the desert. A second occupant of the Ford van was killed in the crash. The Dodge van and the Toronado came upon the accident scene shortly after officers Epps and Wright

stopped their Customs Patrol car. Officer Epps stepped into the road where, in full uniform, he was illuminated by the headlights of the overturned van. The rotating red light and other emergency lights on the Customs Patrol car were switched on, and Epps, with flashlight in hand, attempted to wave the two vehicles to a halt to ascertain what they were doing in the area. The first vehicle to pass was the Dodge van. It was necessary for Epps to move out of the road to avoid being struck by this vehicle. He was able, however, to record the license plate number of the Dodge van. Epps's encounter with the second vehicle, the gold Toronado, was somewhat more harrowing. Epps testified that as the Toronado approached the accident scene, it accelerated and swerved toward him. Epps jumped from the path of the Toronado. Recovering his feet, Epps saw both vehicles head west on Interstate 10 toward El Paso. He immediately radioed this information, including the license plate number of the Dodge van, to his Communications Sector, which in turn relayed the information to all available law enforcement authorities.

At 2:30 a. m., one hour after officers Epps and Wright spotted the headlights coming from the river in the Balluco Arroyo, the Dodge van, identified by description and license plate number, was stopped by officers of the El Paso Police Department some sixty miles from the crash site. Appellant Vasquez, his girl friend who testified later for the Government, and two male suspects were taken from the van. All, except the girl friend, were placed face down on the ground. Approximately one hour later, between 3:30 and 4:00 a. m., Special Agent Fuentes with the Drug Enforcement Administration arrived on the scene. The three suspects were allowed to stand at this time for questioning by Agent Fuentes. One of the suspects, Pablo Aguilar, was questioned separately by Agent Fuentes and stated, among other things, that the only person who could provide details to the authorities was appellant Vasquez. Somewhat later, at the El Paso Sheriff's Department Booking Room, Agent

Fuentes had his first opportunity to question appellant Vasquez. After being fully informed of his rights, appellant Vasquez stated that he was willing to cooperate with the authorities, but that he preferred to speak with officer Joe Contreras, an El Paso police detective attached to the DEA Task Force. Officer Contreras was notified and arrived at the County Jail around 7:00 a. m. Appellant Vasquez was again advised of his rights, this time by officer Contreras, and confessed in full about his participation in the smuggling conspiracy. In enviable detail, appellant Vasquez stated to officer Contreras that he had been the "money man" for the transaction, that he and the others had been waiting at a local motel for the marijuana to be brought across the border, that they had received word from an unidentified source in Mexico that "someone had put the finger on the deal," and that they had gone out onto the highway to warn the other participants not to bring the marijuana across the border. As fate would have it, appellant Vasquez and the others were too late to salvage the illicit scheme. At 10:00 a. m., the same morning, appellant Vasquez was taken before a magistrate.

■ We turn first to the argument that the officers of the El Paso Police Department who stopped the Dodge van at 2:30 a. m. lacked the requisite probable cause to arrest and detain appellant Vasquez and the other suspects. In reviewing probable cause decisions made by law enforcement officers in the field, we look to the totality of the circumstances revealed by the record. *See Beck v. Ohio,* 379 U.S. 89, 91, 85 S.Ct. 223, 13 L.Ed.2d 142 (1964). If the arresting and detaining officers are acting on information relayed by police transmission facilities, then the Government must demonstrate that the information so provided "itself had a reasonable foundation." *United States v. Impson,* 482 F.2d 197, 199 (5 Cir.), *cert. denied,* 414 U.S. 1009, 94 S.Ct. 371, 38 L.Ed.2d 246 (1973); *see Whiteley v. Warden,* 401 U.S. 560, 91 S.Ct. 1031, 28 L.Ed.2d 306 (1971). And where, as here, there is at least minimal

communication between the different arms of the law, we look to the "collective knowledge" of the law enforcement authorities in question. *See United States·v. Nieto,* 510 F.2d 1118, 1120 (5 Cir. 1975); *United States v. Trabucco,* 424 F.2d 1311, 1315 (5 Cir.), *cert. denied,* 399 U.S. 918, 90 S.Ct. 2224, 26 L.Ed.2d 785 (1970); *Moreno-Vallejo v. United States,* 414 F.2d 901, 904 (5 Cir. 1969), *cert. denied,* 400 U.S. 841, 91 S.Ct. 82, 27 L.Ed.2d 76 (1970). Thus, if Customs Patrol officers Epps and Wright possessed sufficient factual information to support a determination of probable cause to arrest and detain, then the actual arrest and detention one hour later by El Paso police officers acting on the information relayed by Communications Sector was supported similarly by probable cause.

■ There can be no question but that law enforcement authorities had probable cause to arrest and detain appellant Vasquez. When officers Epps and Wright first observed the Dodge van in which appellant Vasquez was riding, the hour was late. *See United States v. Pearson,* 448 F.2d 1207, 1212 (5 Cir. 1971). Moreover, the area around Farm Road 192 is sparsely populated. *See United States v. Maslanka,* 501 F.2d 208, 212 (5 Cir. 1974). Officer Epps testified that it was highly unusual to see any traffic on Farm Road 192 in the early morning hours. Both Epps and Wright had worked in the area for over a year, and neither recognized the Ford van, the Dodge van, or the gold Toronado as local in origin. The events that transpired after the crash of the Ford van, of course, provided the weightiest support for the decision to arrest and detain appellant Vasquez. While flight from a law enforcement officer cannot support alone a determination of probable cause, flight can provide in appropriate circumstances the key ingredient justifying the decision of a law enforcement officer to take action. *See United States v. Jacquillon,* 469 F.2d 380, 385 (5 Cir. 1972); *Johnson v. Middlebrooks,* 383 F.2d 386 (5 Cir. 1967). We consider the events transpiring on Farm Road 192 appropriate to the application of

this principle.[1] We hold that the arrest and detention of appellant Vasquez was supported by probable cause; there was no illegal taint on appellant's subsequent confession to officer Contreras.

■ Appellant Vasquez argues, in the alternative, that the facts surrounding his arrest and detention destroyed the voluntariness of his confession to officer Contreras. The district court held the required evidentiary hearing on the issue of voluntariness and found against appellant Vasquez. *See Jackson v. Denno,* 378 U.S. 368, 84 S.Ct. 1774, 12 L.Ed.2d 908 (1964). The standard that we apply in reviewing the district court's finding of voluntariness is that of clear error, *see, e. g., United States v. Maxwell,* 484 F.2d 1350, 1352–53 (5 Cir. 1973), and on the instant record, we are unable to say that the finding of voluntariness was clearly erroneous. *See Schneckloth v. Bustamonte,* 412 U.S. 218, 93 S.Ct. 2041, 36 L.Ed.2d 854 (1973). The time between appellant Vasquez's arrest and confession was approximately six hours, a not excessive period of pre-confession detention given the late hour at which the Dodge van was stopped by El Paso police officers. Moreover, appellant Vasquez delivered his confession to an El Paso police detective whom he had requested by name, and the confession was preceded by at least two separate readings to appellant of his *Miranda* rights. The trial court, as was its prerogative in the role of trier of fact, rejected as incredible testimony that appellant Vasquez was subjected to brutality when he was initially arrested and detained by El Paso police officers. The burden was on the Government to show voluntariness by a preponderance of the evidence, *see Lego v. Twomey,* 404 U.S. 477, 92 S.Ct. 619, 30 L.Ed.2d 618 (1972), and we are of the decided opinion that the Government discharged properly its burden in this case. The confession of appellant Vasquez was admissible to show guilt.

■ As a final point, appellant Vasquez challenges the introduction below of certain testimony claimed to be violative of *Bruton v. United States,* 391 U.S. 123, 88 S.Ct. 1620, 20 L.Ed.2d 476 (1968). *See United States v. Gray,* 462 F.2d 164 (5 Cir. 1972); *Posey v. United States,* 416 F.2d 545 (5 Cir. 1969). After the Dodge van had been stopped by El Paso police officers, DEA agent Fuentes questioned one of the occupants of the van, Pablo Aguilar. At trial, agent Fuentes testified that during this questioning, Aguilar stated that appellant Vasquez had picked him up on the night of February 25, 1976, and that he [Aguilar]

> went down there to assist in the transportation of marijuana. They followed a certain route—I can't recall the exact details, something to the effect that they turned their lights on and off, that he did not know who was going to bring the marijuana across and that all he was going to do was assist in the transportation of the marijuana.

> . . . . .

> [Aguilar] just made the comment that it was all a big mistake, and that he was real disappointed about everything.

Appendix at 280, 284.

Assuming, without deciding, that the testimony of agent Fuentes was a technical violation of *Bruton,* the introduction of the testimony was, in our view, harmless error beyond a reasonable doubt. *See Chapman v. California,* 386 U.S. 18, 87 S.Ct. 824, 17 L.Ed.2d 705 (1966). The evidence introduced by the Government against appellant

1. We do not find it necessary to rely upon the testimony of officer Epps that the Ford van "appeared to meet" the Dodge van and the gold Toronado. Officer Epps was unable upon cross-examination to point to a single objective fact to support his testimony. *See* Appendix at 191. A decision to arrest and detain must, of course, rest on more than mere suspicion. *See United States v. Watson,* 423 U.S. 411, 96 S.Ct. 820, 824–25, 46 L.Ed.2d 598 (1976); *Gerstein v. Pugh,* 420 U.S. 103, 113, 95 S.Ct. 854, 43 L.Ed.2d 54 (1975); *Ker v. California,* 374 U.S. 23, 34–35, 83 S.Ct. 1623, 10 L.Ed.2d 726 (1963); *Draper v. United States,* 358 U.S. 307, 79 S.Ct. 329, 3 L.Ed.2d 327 (1959); *United States v. McCann,* 465 F.2d 147, 157–58 (5 Cir. 1972), *cert. denied,* 412 U.S. 927, 93 S.Ct. 2747, 37 L.Ed.2d 154 (1973); *Dodd v. Beto,* 435 F.2d 868 (5 Cir. 1968).

Vasquez, other than the challenged portion of agent Fuentes' testimony, was overwhelming. *See Harrington v. California,* 395 U.S. 250, 254, 89 S.Ct. 1726, 23 L.Ed.2d 284 (1969). In particular, the Government introduced the detailed confession by appellant Vasquez to officer Contreras, which we have held to be fully voluntary and untainted by an alleged illegal arrest and detention. We reject appellant Vasquez's *Bruton* argument, in addition to the others proffered by appellant, and we affirm his convictions under sections 841(a)(1) and 846 accordingly.

 As indicated above, appellant Chavez-Cortinas concedes in effect the propriety of his conviction under section 841(a)(1) for possession of marijuana with intent to distribute; he argues, however, that the Government did not introduce sufficient evidence to sustain the jury's verdict of guilty on the conspiracy charged under section 846.[2] We disagree. Aside from the evidence introduced by the Government that established clearly appellant's possession of the marijuana carried in the Ford van, the following items of evidence, in our view, supported the jury's finding that appellant was a participant in the conspiracy: The flight of the Dodge van and the Toronado away from the site on Farm Road 192 where the Ford van crashed suggests strongly that the three vehicles were more than coincidently on the road together. Indeed, appellant Vasquez confessed to officer Contreras that he and the others had gone out onto the highway to warn the van not to bring the marijuana across. Officer Contreras testified that Vasquez told him that two unidentified individuals would transport the marijuana across the border and guard it pending inspection by the buyers. The jury was justified in concluding the Chavez-Cortinas and Moreno, who was killed in the crash of the Ford van, were the two individuals designated, except by name, in the confession to officer Contreras. Finally, the other occupant of the Ford van,

Moreno, was identified by appellant Vasquez's girl friend, who testified for the Government, as being present in a motel room with the other conspirators. Examining all the evidence in a commonsense manner, and in the light most favorable to the Government, we conclude that the jury's finding of guilty on the conspiracy count was fully supported by the evidence. *See Glasser v. United States,* 315 U.S. 60, 62 S.Ct. 457, 86 L.Ed. 680 (1942). A conspiracy by its very nature is clandestine, and the Government can rely on circumstantial evidence to establish the existence of the conspiracy and the identity of its members. *See Blumenthal v. United States,* 332 U.S. 539, 68 S.Ct. 248, 92 L.Ed. 154 (1947). In the instant case, the Government's circumstantial evidence was adequate to the task.

The convictions of appellants Vasquez and Chavez-Cortinas are in all respects AFFIRMED.

---

**2.** Appellant argues also that double jeopardy and common law merger principles bar a simultaneous prosecution for conspiracy and the underlying substantive offense. The argument is without merit. *See Matthews v. United States,* 407 F.2d 1371 (5 Cir. 1969), *cert. denied,* 398 U.S. 968, 90 S.Ct. 2177, 26 L.Ed.2d 554 (1970).