**UNITED STATES of America, Plaintiff,**

v.

**Maurice GORMAN, Defendant.**

**No. 79–346–CR–EPS.**

United States District Court,
S. D. Florida,
Miami Division.

Feb. 8, 1980.

---

James D. McMaster, Asst. U. S. Atty., Miami, Fla., for plaintiff.

Roy E. Black, Miami, Fla., for defendant.

## MEMORANDUM OPINION AND ORDER

SPELLMAN, District Judge.

Defendant Maurice Gorman moves this Court to suppress the evidence obtained by the government as a result of a search of his luggage at the Miami International Airport. Gorman asserts that his constitutional rights under the Fourth Amendment were violated by an illegal search and seizure. Defendant contends that the search was unreasonable since no reason existed to hand-inspect the interior of his luggage, that the "suspicion" was not that weapons were present, but was merely a pretext to search for narcotics, and that the cocaine seized was not properly in plain view. For the reasons delineated in this opinion, defendant's argument is without merit and the motion to suppress is denied.

On September 12, 1979, the defendant arrived at the Miami International Airport to board a flight to Chicago. Gorman presented himself and his luggage at a security checkpoint at Concourse H prior to boarding. He placed his shoulder bag on the conveyor belt to an X-ray machine operated by Gilbert Carasco. Carasco, a private security officer employed by Wells Fargo Security Guard Services, observed suspicious objects that appeared to him to be knives or letter openers 7–10 inches long bunched together. Carasco ordered a second employee, Isabel Rodriguez, to search the bag. Rodriguez opened the bag at a small table located at the checkpoint, and while looking through the items contained in the bag, found a pair of pants which appeared to have something stuck in the legs. As she withdrew the pants, two plastic bags containing a substance later determined to be cocaine fell out of the pants leg into the lower portion of the bag. Defendant was then placed under arrest by Officer Facchiano of the Miami Airport Drug Courier Intercept Unit.

At the suppression hearing before this Court additional factors were brought out concerning the activities of Officers Facchiano and McGavock in relation to this incident. On the particular morning in question, Facchiano was working inside the ticket area when he observed Gorman proceeding toward Concourse H in a hurried fashion with McGavock following him. McGavock advised Facchiano that Gorman had been seen exiting a vehicle with a small piece of luggage, had started toward the terminal and abruptly turned and walked back to the car again. At the vehicle, Gorman told an individual "see you later" in a cynical voice. McGavock further told Facchiano that defendant "looked around several times" and then hurriedly proceeded toward the terminal acting as if someone were following him. Facchiano followed Gorman to a point where he observed the defendant proceeding through the magnetometer with his bag on the belt to the X-ray machine. An unidentified clerk asked him if he wished to look in the bag. Facchiano said he did not and walked behind the screening area to look at the X-ray image on the screen. He got a short glimpse of this image and then positioned himself to observe the items being taken out of the bag. Facchiano arrested Gorman when the cocaine was discovered.

## I. GOVERNMENT ACTION

The Government argues that the search did not involve sufficient participation by its officers or agents to constitute a search within the meaning of the Fourth Amendment. It is well recognized that searches conducted by private individuals for purely private purposes are not within the purview of constitutional regulation. *Burdeau v. McDowell*, 256 U.S. 465, 41 S.Ct. 574, 65 L.Ed. 1048 (1921); *United States v. Aaron*, 545 F.2d 488 (5th Cir. 1977); *United States v. Maxwell*, 484 F.2d 1350, 1352 (5th Cir. 1973); *Barnes v. United States*, 373 F.2d 517 (5th Cir. 1967).

In *Aaron*, a defendant left the airport without picking up a bag, and an airline employee, pursuant to his normal procedures, searched the bag for identification. Citing the *Barnes* case, which involved a search by a motel keeper of a guest's bag, the Court of Appeals held there was no violation of the defendant's rights when heroin was found. In *Maxwell*, a seizure was upheld when a private citizen opened defendant's truck door and a shotgun was seen by an officer under the seat. The *Blanton* case involved a search by an airline employee of an unclaimed bag in a public baggage area.

■ Unlike the cases cited above, the search of defendant's bag was not for a totally private purpose. Although the security officers may not be technically in "league" with government officials (See *Aaron, supra*, at 490), the security arrangements are based on "a reasonable governmental interest in protecting national air commerce." *United States v. Slocum*, 464 F.2d 1180, 1182 (3d Cir. 1972). The purpose of such searches involves two interrelated interests, "the central purpose of thwarting air piracy" and the physical protection of both the officer and passengers. *United States v. Moreno*, 475 F.2d 44, 47 (5th Cir. 1973). In light of this public purpose, and the fact that private security officers act in concert with the government agents at the airport in advancing those interests, the search by the private security officer involves sufficient government participation to constitute a search within the meaning of the Fourth Amendment.

## II. REASONABLE SUSPICION

■ Defendant contends that the testimony of security guard Carasco regarding his suspicions and beliefs at the time he ordered the second employee, Isabel Rodriguez, to search the bag should be discounted. He argues that Carasco's statements that he was not aware of Agent Facchiano when he ordered the search, and that he saw metallic objects in the X-ray machine are incredible based upon the position of the agent at that time and the fact that at the hearing Carasco could not find any items in the bag that could have accounted for the images allegedly seen. Viewing the testi-

mony of Carasco with regard to the various positions of the parties, the accuracy of his observations and his demeanor, this Court finds the search was not pretextual and that Carasco ordered the search of defendant's bag solely because of what he reasonably believed to be images of dangerous objects or weapons in the X-ray machine.

■ Airport security searches have been upheld based upon "mere and unsupported suspicion." *United States v. Skipwith*, 482 F.2d 1272, 1276 (5th Cir. 1973). This standard has been justified based upon the obvious analogy to border searches. *United States v. Moreno, supra*, at 51. These security measures "are reasonable, . . . insofar as they permit government agents to determine whether a suspect presents an immediate danger to air commerce." *United States v. Cyzewski*, 484 F.2d 509, 513 (5th Cir. 1973). The test of reasonableness depends on the facts and circumstances of each case. *United States v. Skipwith, supra*.

The central inquiry here is whether the suspicions of Carasco were based upon a reasonable belief by him that defendant's bag contained dangerous items or weapons, not whether the actual items or evidence sought were discovered during the search. As the Supreme Court stated in *United States v. Di Re*, 332 U.S. 581, 595, 68 S.Ct. 222, 229, 92 L.Ed. 210 (1947):

"We have had frequent occasion to point out that a search is not to be made legal by what it turns up. In law it is good or bad when it starts and does not change character from its success."

This proposition was restated by the Fifth Circuit in *United States v. Wysocki*, 457 F.2d 1155, 1160 (5th Cir. 1972):

"In reaching our decision we are confronted with the fact that the agent's judgment that the box contained a gun proved to be erroneous. But we do not deem [this] to be the controlling question; . . . We must consider the case on the basis of what the officers saw and the reliable information they possessed."

Nor is it relevant that the search for weapons uncovered cocaine. In *United States v.*

*Skipwith, supra*, the Court stated (482 F.2d at 1278):

"Although the discovery of cocaine in a search for weapons may be unexpected by the government, there is nothing in the Constitution that gives an apprehended felon the right to complain because the product of the protective action was not anticipated."

Carasco's testimony indicated that there may have been other things such as zippers or non-metallic objects that could have made the shadow seen. Upon reviewing all the evidence in this case, I conclude that Carasco's activities were predicated *solely* on his assessment, right or wrong, that dangerous objects or weapons could have been present based on his observations, experience and training.

## III. THE "PLAIN VIEW" SEIZURE

The defendant further asserts that the evidence was not properly in plain view when seized, since Facchiano observed the cocaine while assisting Rodriguez by holding open the bag while she searched. Defendant cites no applicable cases in support of his proposition and it is without merit.

■ In this case, the defendant was not lawfully arrested until after Facchiano saw the evidence fall into the bottom portion of the bag. The testimony clearly reveals that Facchiano was in a place he could properly be, behind the screening area. Nor is the "plain view" seizure invalid based on the inadvertence requirement. *See Coolidge v. New Hampshire*, 403 U.S. 443, 469–72, 91 S.Ct. 2022, 2040–2041, 29 L.Ed. 564 (1971).

In *Coolidge*, a plurality of the Court indicated that the inadvertence requirement does not apply to contraband, stolen goods or objects dangerous in themselves (403 U.S. at 471–72, 91 S.Ct. at 2040–2041). In his dissenting opinion as to Part II of that opinion which dealt with the "plain view" exception and the inadvertence requirement, Justice White stated that the Court (403 U.S. at 519, 91 S.Ct. at 2064 [White, J., dissenting]):

"[I]s careful to note that Coolidge's car is not contraband, stolen, or itself dangerous. Apparently, contraband, stolen, or dangerous materials may be seized when discovered in the course of an otherwise authorized search even if the discovery is fully anticipated and a warrant could have been obtained. The distinction the Court draws between contraband and mere evidence of a crime is reminiscent of the confusing and unworkable approach that I thought *Warden v. Hayden,* *supra* [387 U.S. 294, 87 S.Ct. 1642, 18 L.Ed.2d 782], had firmly put aside."

Justice White's total rejection of the inadvertence requirement in *Coolidge* can be viewed as an implied concurrence to that part of the Court's dicta dealing with contraband, stolen goods and objects dangerous in themselves, and several other courts have refused to apply the inadvertence rule on that basis. *See United States v. Cutts,* 535 F.2d 1083, 1084 (8th Cir. 1976); *United States v. Carwell,* 491 F.2d 1334 (8th Cir.), *cert. denied,* 417 U.S. 949, 94 S.Ct. 3076, 41 L.Ed.2d 669 (1974); *United States v. Smollar,* 357 F.Supp. 628, 632–33 (S.D.N.Y.1972); Kelder & Statman, "The Protective Sweep Doctrine—Recurrent Questions Regarding the Propriety of Searches Conducted Contemporaneously With an Arrest On or Near Private Premises," 30 Syr.L.Rev. 973, 1084, n.342 (1979). *See also* the recent opinion in *United States v. Liberti,* 616 F.2d 34 at 38 (2d Cir. 1980) (Newman, J., concurring).

 Assuming *arguendo* the inapplicability of the contraband exception to the inadvertence rule, this seizure would not be ·invalid since Officer Facchiano did not have probable cause to believe contraband would be discovered when he positioned himself behind the X-ray machine and, therefore, could not have obtained a warrant. The text in the Fifth Circuit for a successful challenge to a "plain view" seizure based on the inadvertence requirement necessitates that in advance of the intrusion that afforded the seizure, officers possess probable cause to believe items are located at the place invaded, and that they had the ability to procure a search warrant. Kelder & Statman, *supra; United States v. Bolts,* 558 F.2d 316, 320 (5th Cir.), *cert. denied,* 434 U.S. 930, 98 S.Ct. 417, 54 L.Ed.2d 290 (1977); *United States v. Worthington,* 544 F.2d 1275, 1280 n.4 (5th Cir. 1977); *United States v. Marshall,* 452 F.Supp. 1282, 1287 (S.D.Fla.1978), *rev'd on other grounds,* 609 F.2d 152 (5th Cir. 1980). *Cf. United States v. Cushnie,* 488 F.2d 81 (5th Cir. 1973) (seizure of evidence must be prime motivation for arrest to suppress seized items under inadvertence rule).

### IV. ORDER

It is, therefore,

ORDERED and ADJUDGED that the Defendant's motion to suppress is hereby DENIED.