Mary Louise VISOR, Appellant,

v.

The STATE of Texas, Appellee.

No. 933–82.

Court of Criminal Appeals of Texas,
En banc.

Sept. 14, 1983.

John B. Holmes, Jr., Dist. Atty., James C. Brough and Russell Hardin, Asst. Dist. Attys., Houston, for appellant.

Robert Huttash, State's Atty. and Alfred Walker, Asst. State's Atty., Austin, for the State.

## OPINION ON APPELLANT'S PETITION FOR DISCRETIONARY REVIEW

ONION, Presiding Judge.

This appeal is taken from a conviction for possession of heroin. After a bench trial, the court found appellant guilty and assessed her punishment at ten (10) years' imprisonment following her plea of "true" to an enhancement allegation in the indictment.

On appeal the conviction was affirmed in an unpublished opinion by the Waco Court of Appeals. *Visor v. State,* No. 10–81–107–CR (9/23/82). In affirming the conviction, the Court of Appeals found the arrest and search of the appellant away from the premises in question was legally authorized by a combination search and arrest warrant. We granted appellant's petition for discretionary review to consider the correctness of such holding. Specifically, appellant contends that the arrest and search some two to four blocks away from the target house was illegal because: 1) she was not named in the affidavit or warrant; 2) there was no showing that she was the "unknown black female"[1] whose arrest was

---

1. Although appellant does not contest the validity of the search warrant or affidavit, the wording of the warrant is relevant to a disposition of appellant's contentions. Relevant portions of the warrant are therefore set out below:

"... on or about the 22nd day of January, 1979, in the City of Houston, Harris County, Texas *one unknown black female, and an unknown black male,* and *other persons unknown* did then and there unlawfully possess and does at this time unlawfully possess a controlled substance, to-wit heroin and fur-

ther that he has cause to believe that the said controlled substance are now concealed by unknown black female, and unknown black male, and other persons unknown in a private garage apartment, being a two story wood frame building * * *. (Warrant goes on to describe premises) situated in Houston, Harris County, Texas located 2013½ Brackenridge Street which said unknown black female, *and an unknown black male, and other persons unknown* now possess, occupies, controls and has charge of. * * *

authorized in the warrant; and 3) the appellant had not been seen at the target residence during the two and a half week surveillance prior to her arrest.

Houston Police Officer James Lyles testified that the apartment named in the warrant had been under surveillance for some two and one-half to three weeks by Houston Police Department narcotics officers prior to his obtaining a search warrant.[2] Officer Lyles obtained the warrant at approximately 12:05 p.m. on January 22, 1979. He returned to the general locale[3] of the target apartment at approximately 12:30 p.m. Other officers were within a short distance from the premises. They were in contact by radio. Surveillance was continued while the officers were in the process of trying to determine the best way to execute the warrant. Before the warrant was executed, Officer Lyles was informed by other surveillance officers that a pickup truck occupied by two black males and a black female had arrived at the location in question. One of the black males entered the residence and the other black male remained in the truck with the black female. The black male returned to the truck and the three individuals left the premises shortly thereafter.[4]

Another black male was seen by officers arriving at the apartment in question by taxi. After entering the apartment and staying for a few minutes, he likewise departed shortly after his arrival.

Officer Lyles was next informed that a black male and black female were leaving the apartment in question, the black male apparently using a key to lock the door to the apartment. The two individuals left the apartment in an automobile and were arrested and searched after their automobile had been stopped by police. The search yielded what was believed to be controlled substances. The driver of the auto, Walter Visor, was detained as well as his black female companion. When questioned at the scene, Visor related that his wife "was the only person back there" (at the target apartment). There is nothing to show that Visor gave his wife's name or described her at all.

At approximately 5 p.m. Officer Lyles was informed that another vehicle occupied by two black females had arrived at the apartment named in the warrant. The two occupants exited the vehicle and entered the apartment. Surveillance of the apartment continued while the officers were preparing to execute the warrant. Sometime later, Officer Lyles was then notified by other surveillance units that a black female (appellant), who was not one of the two females which had earlier been observed entering the apartment, had exited the apartment and was leaving the premises in the auto in which the other two black females had arrived. She was not observed violating any law or acting in a suspicious manner. Pursuant to instructions from Officer L.K. Clark, appellant's vehicle was stopped some four blocks away from the apartment. A search of appellant's person

"You are therefore commanded to forthwith search the place above named and described where the said controlled substance, to-wit: heroin are alleged to be concealed, and if you find such controlled substance or any portion thereof, you will seize the same and bring it before me at my office, situated at Houston, Harris County, Texas, on the 26 th day of January A.D. 1979. * * * *  *And, you are commanded to arrest and bring before me, at said place and time, the said: Unknown black female and unknown black male, and other persons unknown accused of the possession of the said controlled substance. * * * *"* (Emphasis supplied.)

2. This was not a round the clock surveillance, and for three days, there was no surveillance.

3. Officer Lyles testified he stationed himself "some distance away" from the target apartment so as not to be observed by occupants of the apartment.

4. The officers observed a common procedure utilized by individuals who arrived at the target residence, viz: the person desiring entrance would knock on the lower front door and thereafter step backwards so as to enable themselves to be seen by an individual inside the residence situated in an upper window. The front door would then be opened and the individual would be allowed in. Not all the people who came to the front door were admitted.

yielded heroin. After the officers entered the residence and secured the parties inside, being two black males and three black females, the appellant was taken to the apartment. Walter Visor and his female companion were also returned to the apartment.

Officer Lyles testified the only description the officers had was that in the warrant an "unknown black woman," which was the only description given by the unnamed confidential informer mentioned in the search warrant affidavit. There was nothing to show the name, approximate age, weight, size, distinguishing characteristics, etc., of the woman supposedly in charge of the premises. There does not appear to have been any effort to determine who owned or leased or rented the premises, or in whose name the utilities were listed.

In upholding the conviction, the Court of Appeals wrote:

"We have concluded the trial court's ruling on admissibility of the heroin was correct. The warrant here was a combination search and arrest warrant, and such is unquestionably valid. *Pecina v. State*, Ct.Crim.Appls, 516 S.W.2d 401. It is also permissible for a warrant to authorize search or arrest of unknown persons at a particular location, even if those searched or arrested under the authority of the warrant arrive at the location after execution of the warrant has begun. *Fisher v. State*, Ct.Crim.Appls, 493 S.W.2d 841. The basis for this rule is that there is no meaningful distinction between persons found on the premises by the officers when they begin their search and persons who enter the premises after the search has begun. *Rice v. State*, Ct.Crim.Appls, 548 S.W.2d 725. It follows that a warrant directing search and arrest of unknown persons at a particular location will authorize search and arrest of unknown persons observed leaving the target premises. See *Pecina,* supra. Thus the surveilling narcotics officers were authorized by the terms of the warrant, which articulated probable cause, to arrest defendant as she was leaving the premises."

We find the Court of Appeals' reliance upon *Pecina* to justify the arrest and search of appellant under the circumstances presented to be misplaced. And the holdings in *Fisher* and *Rice* may now be suspect in light of *Ybarra v. Illinois,* 444 U.S. 85, 100 S.Ct. 338, 62 L.Ed.2d 238 (1979).

*Pecina* upheld the validity of a combination arrest and search warrant. With this we have no difficulty. In *Pecina* the arrest portion of the warrant was separate and distinct from the search portion and actually named Francisca Pecina as the individual to be arrested. About an hour and a half after the combination warrant was issued, Officer Green and other officers recognized Pecina's car outside the Chug-A-Lug Lounge in Dallas (away from the targeted premises). They entered the lounge and arrested Pecina. A search of her purse revealed biphetamine capsules. A search of the targeted premises was executed later.

In *Pecina,* this court wrote:

"Therefore, an arrest warrant incorporated within a search warrant must be based upon probable cause. *In this regard an arrest warrant incorporated within a search warrant is no different than an arrest warrant issued separate and independent of a search warrant.* And it should be noted that the authority to arrest under an arrest warrant incorporated in a search warrant is not limited to the premises described in the search warrant. *Dawson v. State,* Tex.Cr.App., 477 S.W.2d 277; *Jones v. State,* Tex.Cr. App., 496 S.W.2d 566." (Emphasis supplied.)

In *Pecina* the individual to be arrested was named, but in the instant case the individual was not named. To construe the arrest portion of the combination warrant to authorize the arrest of an "unknown black female" without further description or restriction as to location would be to approve a general warrant prohibited by the federal constitution. See, e.g., *Stanford v. Texas,* 379 U.S. 476, 85 S.Ct. 506, 13 L.Ed.2d 431 (1965). The Court of Appeals

erred in suggesting that a combination warrant which authorizes the arrest of an individual described only as an "unknown black female" under the circumstances is no different than a warrant authorizing the arrest of a named individual as in *Pecina,* so as to authorize an arrest away from the targeted premises.

Further, in *Ybarra v. Illinois,* supra, the United States Supreme Court made clear that a person's legitimate expectation of privacy is not automatically diminished simply by virtue of his presence at a location where probable cause to search coincidentally exists. In *Ybarra* a search warrant issued which authorized the search of a tavern and an individual known as "Greg," who was suspected of selling heroin. Ybarra, a patron of the tavern, was searched by the officers executing the search warrant although there was no probable cause to do so. In condemning the search of Ybarra, the Court wrote:

"... But, a person's mere propinquity to others independently suspected of criminal activity does not, without more, give rise to probable cause to search that person. *Sibron v. New York,* 392 U.S. 40, 62–63, 88 S.Ct. 1889 [1902–1903], 20 L.Ed.2d 917, 44 Ohio Ops.2d 402. *Where the standard is probable cause, a search or seizure of a person must be supported by probable cause particularized with respect to that person. This requirement cannot be undercut or avoided by simply pointing to the fact that coincidentally there exists probable cause to search or seize another or to search the premises where the person may happen to be.* The Fourth and Fourteenth Amendments protect the 'legitimate expectations of privacy' of persons, not places. See *Rakas v. Illinois,* 439 U.S. 128, 138–143, 148–149, 99 S.Ct. 421 [427–430, 432–433], 58 L.Ed.2d 387, *Katz v. United States,* 389 U.S. 347, 351–352, 88 S.Ct. 507 [511–512], 19 L.Ed.2d 576.

"Each patron who walked into the Aurora Tap Tavern on March 1, 1976, was clothed with constitutional protection against an unreasonable search or an unreasonable seizure. That individualized protection was separate and distinct from the Fourth and Fourteenth Amendment protection possessed by the proprietor of the tavern or by 'Greg.' Although the search warrant, issued upon probable cause, gave the officers authority to search the premises and to search 'Greg,' it gave them no authority whatever to invade the constitutional protections possessed individually by the tavern's customers.[4]" *Ybarra v. Illinois,* supra, at 444 U.S. 91, 92, at 100 S.Ct. 342, 343. (Emphasis supplied.)

Footnote four of that opinion provides: "The Fourth Amendment directs that 'no Warrants shall issue, but upon probable cause ... and particularly describing the place to be searched and the persons or things to be seized.' Thus, 'open-ended' or 'general' warrants are constitutionally prohibited. See *Lo-Ji Sales, Inc. v. New York,* 442 U.S. 319, 99 S.Ct. 2319, 60 L.Ed.2d 920; *Marshall v. Barlow's, Inc.,* 436 U.S. 307, 311, 98 S.Ct. 1816 [1819], 56 L.Ed.2d 305; *United States v. Chadwick,* 433 U.S. 1, 7–8, 97 S.Ct. 2476 [2481–2482], 53 L.Ed.2d 538; *Stanford v. Texas,* 379 U.S. 476, 480–482, 85 S.Ct. 506 [509–510], 13 L.Ed.2d 431. *It follows that a warrant to search a place cannot normally be construed to authorize a search of each individual in that place.* The warrant for the Aurora Tap Tavern provided no basis for departing from this general rule. *Consequently we need not consider situations where the warrant itself authorizes the search of unnamed persons in a place and is supported by probable cause to believe that persons who will be in the place at the time of the search will be in possession of illegal drugs.*" Id. (Emphasis supplied.)

While *Ybarra* did not expressly address the issue before us, it does conflict or call into question earlier opinions of this court, including *Fisher* and *Rice,* relied upon by the Court of Appeals, holding that it is permissible for a search warrant which authorizes the search of designated premises and specified individuals to also authorize the search of any unknown individuals

found on the premises or who enter during the execution of the search warrant.

Although the arrest and search of appellant on January 22, 1979 was prior to the *Ybarra* decision, all Fourth Amendment decisions are to be applied retroactively to cases not yet final when the decision was rendered. *United States v. Johnson,* 457 U.S. 537, 102 S.Ct. 2579, 73 L.Ed.2d 202 (1982); *Duncan v. State,* 639 S.W.2d 314 (Tex.Cr.App.1982).[5]

We hold that the arrest of the appellant, under the combination warrant and circumstances here presented, was invalid and the fruits of the search incident to said arrest were inadmissible in evidence.

We cannot agree with the State's argument that independent of the combination warrant the officers had probable cause to make a warrantless arrest of the appellant and to search her incident to that arrest.

The judgment is reversed and cause remanded.

---

**5.** *Rodriquez v. State,* 614 S.W.2d 448 (Tex.Cr. App.1981), holding *Ybarra* is not retroactive, has been overruled.