Hubert Dewayne WASHINGTON, Appellant,

v.

The STATE of Texas, Appellee.

No. 68173.

Court of Criminal Appeals of Texas, En Banc.

Nov. 2, 1983.

Rehearing Denied Dec. 14, 1983.

---

**534**

Randy Schaffer, court appointed on appeal, Houston, for appellant.

John B. Holmes, Jr., Dist. Atty. and Bill Willms, Asst. Dist. Atty., Houston, Robert Huttash, State's Atty., Austin, for the State.

## OPINION

TOM G. DAVIS, Judge.

Appeal is taken from a conviction for possession of a controlled substance, namely hydromorphone. After finding appellant guilty, the court assessed punishment at 20 years.

On February 14, 1979, Harris County police officers obtained a search warrant to search the apartment of Carl James Venter in Houston. The affidavit in support of the warrant was based on information from a "reliable and credible informant" who had given accurate information on many prior occasions. The informant had been in the apartment on February 14 and had seen Dilaudid tablets and a stolen pistol. The informant also had "been in Venter's apartment on many different occasions and had

seen many narcotics addicts bring property which was stolen to Venter, and trade it for Dilaudid (Hydromorphone) tablets." The warrant directed the officers to seize any Dilaudid, stolen property, or other contraband found in the apartment and to "arrest those with it in their possession...." Upon execution of the warrant the following day, the officers seized several television sets, stereo equipment, and other items suspected to be stolen. They also found 120 Dilaudid tablets, a pistol, two shotguns and a rifle in the apartment. Although only one person was in the apartment when the officers began the search, eight other persons, including appellant, arrived during the search and were arrested.

Officer B.W. Norman testified that appellant arrived at the apartment approximately three hours after the search had begun. Norman, who knew appellant "by sight and by name," was in the parking lot of the apartment when appellant arrived. Norman followed appellant and saw him enter Venter's apartment. Officer W.H. Elliott and two officers in uniform were in the living room of the apartment when appellant walked in. Elliott had been engaged in surveillance of the apartment in the week prior to the search and had seen appellant and other persons "come and go" from the apartment during that time. Elliott testified that when appellant saw the officers he "broke and ran up the stairs" inside the apartment and "was told to stop and he continued to run." Elliott followed appellant and was able to stop him on the stairs together with an officer who came down the stairs toward appellant.

Elliott made a "pat-search" of appellant to see if he was carrying a weapon and felt two large bulges. Further investigation revealed that the bulges consisted of a prescription bottle with 60 Dilaudid tablets and a roll of "six or seven hundred dollars in small bills." The bottle had a prescription label on it dated February 15, 1979, made out to Joe Merrit Beasley. Appellant had two driver's licenses in his pocket with the Dilaudid, one belonging to Joe Merrit Beas-

ley and the other belonging to Henry Williams, Jr.

Appellant contends that the trial court erred in allowing the hydromorphone and the licenses into evidence because they were obtained by "an unreasonable search and seizure of appellant's person." Appellant argues that the officers lacked probable cause to search him either under the authority of the warrant or otherwise.

■ We will first determine whether the officers had probable cause to search appellant independent of the search warrant. The standard for probable cause in a warrantless search is no less stringent than that required to be shown for the issuance of a search warrant. *Barber v. State,* 611 S.W.2d 67 (Tex.Cr.App.1981).

■ Probable cause to search or arrest exists when reasonably trustworthy facts and circumstances within the knowledge of the officer on the scene would lead a man of reasonable prudence to believe that the instrumentality of a crime or evidence pertaining to a crime will be found. *Barber v. State,* supra. The circumstances must also be such that the procuring of a warrant is impracticable. *Id.,* see also *Hooper v. State,* 516 S.W.2d 941 (Tex.Cr.App.1974).

■ In the instant case, the search of the apartment pursuant to a valid search warrant uncovered narcotics, stolen property and weapons. Appellant, who had been linked to the apartment by prior surveillance, entered the apartment during the search and ran away from the officers and continued to run when told to stop. Flight from a law enforcement officer "can provide in appropriate circumstances the key ingredient justifying the decision of a law enforcement officer to take action." *United States v. Vasquez,* 534 F.2d 1142, 1145 (5th Cir.1976), cert. denied 429 U.S. 979, 97 S.Ct. 489, 50 L.Ed.2d 587 (1976); see also W.

LaFave, Search and Seizure, Sec. 3.6(e). Probable cause existed for the search.

Appellant's ground of error is overruled.[1]

■ Appellant also challenges the sufficiency of the evidence to show unlawful possession of hydromorphone. According to appellant, the uncontroverted evidence demonstrates that the hydromorphone was obtained pursuant to a valid prescription and thus his possession of the drug falls within the "prescription exception" to the Controlled Substances Act.

The record reflects that some person other than appellant or Joe Merrit Beasley presented himself as Beasley to Dr. William H. Andrew in Humble on February 15, 1979 and was issued a prescription for 60 Dilaudid tablets. Later the same day appellant presented the prescription and Beasley's driver's license to pharmacist George Tompkins at the Sacco Pharmacy in Houston. Tompkins filled the prescription and appellant signed a form which reflected that he was obtaining the prescription for Beasley. Still later the same day appellant was found with the pills and Beasley's license at the apartment and was arrested. The pills were in a prescription bottle which bore Beasley's name and license number, Dr. Andrew's name, and Tompkins' name. The label, the prescription, and the form signed by appellant at the pharmacy all had the same prescription identification number and were introduced into evidence.

Beasley testified for the State that he did not know appellant, had never been to see Dr. Andrew, nor had Dilaudid ever been prescribed for him. He identified the driver's license as his but stated that he had never received it through the mail after he had applied for it, and subsequently had obtained a different one. Dr. Andrew was unable to positively identify Beasley as the person he prescribed the pills for.

---

1. Since we find sufficient probable cause for the search, we need not reach appellant's argument that the search exceeded the reasonable scope of a stop within the meaning of *Terry v. Ohio,* 392 U.S. 1, 88 S.Ct. 1868, 20 L.Ed.2d 889 (1968). Furthermore, we need not address the issue of whether a search warrant covering "persons unknown" is valid under *Ybarra v. Illinois,* supra, 444 U.S. 85, 100 S.Ct. 338, 62 L.Ed.2d 238 (1979), and our decision in *Visor v. State,* 660 S.W.2d 816 (Tex.Cr.App.1983).

Sec. 4.04 of the Controlled Substances Act, Art. 4476–15, V.A.C.S. provides in pertinent part:

"A person commits an offense if he knowingly or intentionally possesses a controlled substance ... unless the substance was obtained directly from, or pursuant to, a valid prescription or order of a practitioner while acting in the course of his professional practice."

In *Posey v. State,* 545 S.W.2d 162 (Tex. Cr.App.1977), we stated that under the Controlled Substances Act:

"It is not a criminal offense to obtain a controlled substance for a friend or family member by presenting to a pharmacist a prescription prescribing a controlled substance for that friend or family member which had been properly obtained." Id. at 164.

Of course the friend or family member obtaining a controlled substance for another may not use the substance. See *Scott v. State,* 600 S.W.2d 801 (Tex.Cr.App.1980).

The evidence presented does not establish the "prescription exception" to the Controlled Substances Act. Assuming that a prescription issued to a person presenting a false identification can be a valid prescription under the Act, there is no evidence in the instant case that appellant was a "friend or family member" of the anonymous person who presented Beasley's license to Dr. Andrew. *Posey v. State,* supra. Appellant did not testify, and the identity of the patient was not established. The form appellant filled out at the pharmacy indicated that he was obtaining the pills for Beasley, but Beasley knew nothing about the prescription and did not know appellant.

Since it is undisputed that appellant had the pills in his possession, since the pills were not prescribed for him, and since there is no evidence that "a friend or family member" authorized him to pick up the pills, we find the evidence to be sufficient to show unlawful possession of a controlled substance.

The judgment is affirmed.

TEAGUE, J., concurs in result.

ONION, P.J., and CLINTON, J., dissent.