**UNITED STATES of America, Plaintiff–Appellee,**

**v.**

**Roland M. SILVA, Defendant–Appellant.**

**No. 91–5609.**

United States Court of Appeals, Fifth Circuit.

March 18, 1992.

Rehearing Denied April 22, 1992.

Alfredo R. Villarreal, Asst. Federal Public Defenders, Lucien B. Campbell, Federal Public Defender, San Antonio, Tex., for defendant-appellant.

Michael R. Hardy, Richard L. Durbin, Jr., LeRoy M. Jahn, Asst. U.S. Attys., Ronald F. Ederer, San Antonio, Tex., for defendant-appellant.

Before THORNBERRY, KING, and DEMOSS, Circuit Judges.

KING, Circuit Judge:

Roland M. Silva appeals the district court's denial of his motion to suppress evidence, a handgun, seized after Silva discarded it while being pursued by police. Silva also appeals his sentence. We affirm.

## I. STATEMENT OF THE CASE

On May 15, 1990, uniformed police went to Debra Campbell's residence in order to execute a felony arrest warrant on her. When the patrol car approached the driveway, Officer Gustavo Salinas noticed that a pick-up truck, driven by Campbell, was attempting to leave the driveway of the residence. The police blocked the driveway with the patrol car to prevent the truck's departure. The truck stopped, and Campbell and her passenger, Silva, got out. Silva briefly faced Officer Salinas, then turned and started to walk away. When Officer Salinas called out to Silva to halt, Silva broke into a run. Officer Salinas chased him. At some point during the chase Silva slipped and fell. Officer Salinas caught up to Silva and tried to grab him, but was only able to touch him before Officer Salinas, too, slipped and fell. Silva scrambled up and began to run away again. While he was running, Silva reached into his waist band and threw a loaded handgun onto the ground. Another officer apprehended Silva a few seconds later.

Silva moved to suppress the evidence of his handgun. The district court denied Silva's suppression motion without express reasons. After a bench trial, Silva was convicted on one count of possession of a firearm by a convicted felon pursuant to 18 U.S.C. § 922(g)(1). The court found that Silva's prior Texas burglary convictions supported enhancement of his sentence pursuant to 18 U.S.C. § 924(e), and sentenced Silva to fifteen years of imprisonment, three years of supervised release, and a $50 mandatory assessment. Silva appeals both the denial of his motion to suppress and his sentence.

## II. DISCUSSION

### A.

Silva argues on appeal that the officer lacked reasonable suspicion to stop him.[1] He argues that he had been unlawfully seized before he discarded the handgun and, consequently, the handgun should have been suppressed as the fruit of this unlawful seizure.

■ We review the factual question whether a seizure occurred for clear error. *United States v. Valdiosera–Godinez*, 932 F.2d 1093, 1098 n. 1 (5th Cir.1991). In the

---

1. The Government does not argue that Officer Salinas had probable cause to arrest Silva.

instant case, the district court did not state any factual findings on the record. The parties therefore ask us to determine whether Silva was seized based on our independent review of the record. *See United States v. Yeagin,* 927 F.2d 798, 800 (5th Cir.1991) ("Since the district court entered no factual findings and indicated no legal theory underlying its decision to admit evidence obtained in the ... search, we must independently review the record to determine whether any reasonable view of the evidence supports admissibility."). *See generally California v. Hodari D.,* — U.S. ——, 111 S.Ct. 1547, 1549–52, 113 L.Ed.2d 690 (1991).

■ In *United States v. Mendenhall,* 446 U.S. 544, 554, 100 S.Ct. 1870, 1877, 64 L.Ed.2d 497 (1980), Justice Stewart stated that "[a] person has been 'seized' within the meaning of the Fourth Amendment only if, in view of all the circumstances surrounding the incident, a reasonable person would have believed that he was not free to leave." [2] The Supreme Court explained this test more fully in *Hodari D.* Justice Scalia, writing for the majority in *Hodari D.,* noted that the *Mendenhall* test was "a *necessary,* but not a *sufficient* condition for seizure" as effected by a show of authority. 111 S.Ct. at 1551 (emphasis in original). To effect a show of authority seizure, the suspect must yield to or comply with that show of authority. *Id.* at 1552. In *Hodari D.,* the Court held that the eponymous defendant, who fled from police and failed to stop when he saw the police running toward him, was not seized at the time he dropped a rock of crack cocaine because he had not yielded to the show of authority. 111 S.Ct. at 1551. The Court determined that Hodari was not seized until the police tackled him, thereby effecting a seizure by physical force. *Id.* Hodari's crack cocaine, disclosed prior to the tackling, could not have been the fruit of an unlawful arrest, according to the Court, because there was no arrest at the time of disclosure. *Id.*

Certainly, at the beginning of the encounter in the driveway, when Officer Salinas told Silva to halt, Silva was not yet seized. Officer Salinas' order to stop and his subsequent pursuit of Silva constituted a show of authority, *cf. id.* at 1550, in response to which Silva did not yield. Therefore, according to the reasoning of *Hodari D.,* Silva was not seized during this initial pursuit.

At one point during the pursuit, however, Officer Salinas touched Silva as they fell to the ground. Silva subsequently escaped Officer Salinas' grasp and continued to flee. During this period of his fugitivity, Silva disclosed the handgun.

The Government argues that the "de minimis" touching which occurred during pursuit was not a seizure because it did not hinder Silva's progress. Because the gun was abandoned without a seizure ever taking place, argues the Government, no Fourth Amendment inquiry is necessary. Silva, on the other hand, argues that this contact constituted a seizure which required reasonable suspicion on the part of Officer Salinas. We need not decide this fact-sensitive issue, however, because we find that, even if the touching constituted a seizure, it was supported by reasonable suspicion.[3]

■ The question whether an officer had reasonable suspicion to stop a person is one of law, subject to de novo review. *See United States v. Casteneda,* 951 F.2d 44 (5th Cir.1992). An officer is justified in

---

**2.** Justice Stewart's opinion was later formally adopted by the Court. *See Michigan v. Chesternut,* 486 U.S. 567, 573, 108 S.Ct. 1975, 1979, 100 L.Ed.2d 565 (1988); *INS v. Delgado,* 466 U.S. 210, 215, 104 S.Ct. 1758, 1762, 80 L.Ed.2d 247 (1984).

**3.** We note that in *Hodari D.,* the Court in dictum posed a hypothetical that mirrors the facts of this case:

> If, for example, [the police officer] had laid his hands upon Hodari to arrest him, but Hodari had broken away and had *then* cast away the [contraband], it would hardly be realistic to say that disclosure had been made during the course of an arrest.

111 S.Ct. at 1550. The Government does not argue that this dictum obviates the necessity of determining, if we find that the initial laying on of hands was a seizure, whether the seizure was lawful, and we do not address that issue.

detaining an individual for investigation if, based on specific articulable facts together with rational inferences from the facts, he suspects that an individual may be engaged in criminal activity. *See United States v. Sokolow,* 490 U.S. 1, 109 S.Ct. 1581, 1585, 104 L.Ed.2d 1 (1989); *United States v. Shaw,* 701 F.2d 367, 377 n. 4 (5th Cir.1983), *cert. denied,* 465 U.S. 1067, 104 S.Ct. 1419, 79 L.Ed.2d 744 (1984). The presence or absence of reasonable suspicion must be determined in light of the totality of the circumstances confronting a police officer, including all information available to the officer at the time of the decision to stop a person. *United States v. Cortez,* 449 U.S. 411, 417–18, 101 S.Ct. 690, 694–95, 66 L.Ed.2d 621 (1981); *see also United States v. Flett,* 806 F.2d 823, 827 (8th Cir.1986); *United States v. Bell,* 762 F.2d 495, 499 (6th Cir.), *cert. denied,* 474 U.S. 853, 106 S.Ct. 155, 88 L.Ed.2d 128 (1985).

During the suppression hearing, Officer Salinas articulated two factors that led him to pursue Silva in order to detain him. First, Silva fled as soon as the uniformed officers approached him. Second, Silva was in the company of an individual upon whom the police were about to execute a felony arrest warrant.

 Silva contends that the mere fact of his flight does not support a finding of reasonable suspicion. While it is true that Silva's flight from the officer is insufficient by itself to show probable cause, *see United States v. Vasquez,* 534 F.2d 1142, 1145 (5th Cir.), *cert. denied sub nom. Chavez Cortinas v. United States,* 429 U.S. 962, 97 S.Ct. 389, 50 L.Ed.2d 330 *and* 429 U.S. 979, 97 S.Ct. 489, 50 L.Ed.2d 587 (1976), flight "supplies another element to the reasonable suspicion calculus." [4] *United States v. Amuny,* 767 F.2d 1113, 1124 (5th Cir. 1985). According to the court in *Amuny,* "[i]f a police officer identifies himself while approaching a suspect and the suspect flees, the suspect's conduct suggests that he knowingly seeks to evade questioning or capture." *Id.* at 1117.

In *Vasquez,* we noted that "flight can provide in appropriate circumstances the key ingredient justifying the decision of a law enforcement officer to take action." 534 F.2d at 1145; *cf. United States v. Chaidez,* 919 F.2d 1193, 1200 (7th Cir.1990) ("[f]light is relevant to whether a detention was reasonable"), *cert. denied,* —— U.S. ——, 112 S.Ct. 209, 116 L.Ed.2d 167 (1991); *United States v. Pope,* 561 F.2d 663, 668–69 (6th Cir.1977) (citing *Vasquez* ) ("flight from a clearly identified law enforcement officer may furnish sufficient ground for a limited investigative stop"); *see also Hodari D.,* 111 S.Ct. at 1549 n. 1 ("That it would be unreasonable to stop, for brief inquiry, young men who scatter in panic upon the mere sighting of the police is not self-evident, and arguably contradicts proverbial common sense."); 3 W. LaFave, *Search and Seizure* § 9.3(c), at 69–70 & n. 164.1 (West 1987 & Supp.1991) ("behavior which evinces in the mind of a reasonable police officer an intent to flee from the police is sufficiently suspicious in and of itself to justify a temporary investigative stop by the police") (citation omitted). Silva's flight may therefore be considered as a factor in support of a finding of reasonable suspicion.

 Silva also argues that his proximity to Campbell should not be considered in a determination of reasonable suspicion. This argument is without merit. Silva cites *Ybarra v. Illinois,* 444 U.S. 85, 91, 100 S.Ct. 338, 342, 62 L.Ed.2d 238 (1979), for the proposition that companionship with or propinquity to an arrestee does not alone provide probable cause. *Ybarra,* however, does not hold that companionship is irrelevant to the determination of probable cause or reasonable suspicion. Indeed, several circuits have held that companionship with or propinquity to an arrestee is a factor which may be considered in determining the reasonableness of an officer's actions. *See, e.g., Chaidez,* 919 F.2d at 1200 (Seventh Circuit) (companionship of suspect and drug dealer a factor in reasonable suspicion

---

**4.** *See also Florida v. Bostick,* —— U.S. ——, 111 S.Ct. 2382, 2387, 115 L.Ed.2d 389 (1991) ("refusal to cooperate, without more, does not furnish

the minimal level of objective justification needed for a detention or seizure").

analysis); *Flett,* 806 F.2d at 827 (Eighth Circuit) (companionship during arrest a factor); *Bell,* 762 F.2d at 499–502 (Sixth Circuit) (same). We agree with these courts that a suspect's companionship with or propinquity to an individual independently suspected of criminal activity is a factor to be considered in assessing the reasonableness of a seizure.

■ In sum, the facts reveal that Silva was discovered in the company of a suspected felon. He subsequently fled from uniformed police officers who had ordered him to halt. We find, based on these facts, that any seizure of Silva that may have occurred was supported by reasonable suspicion. The evidence disclosed during the subsequent pursuit was, therefore, not tainted by unlawfulness. Silva's motion to suppress was properly denied.

### B.

■ Silva also appeals the enhancement of his sentence pursuant to 18 U.S.C. § 924(e).[5] That section is a sentence enhancement provision intended to provide increased punishment for persons convicted of possession of a firearm by a felon under § 922(g), who also have three previous felony convictions for either "serious drug offenses" or "violent felonies." *See generally United States v. Affleck,* 861 F.2d 97, 99 (5th Cir.1988), *cert. denied,* 489 U.S. 1058, 109 S.Ct. 1325, 103 L.Ed.2d 593 (1989). The term "violent felonies" includes burglary. 18 U.S.C. § 924(e)(2)(B)(ii). Whether the convictions have been sufficiently proved for enhancement purposes is a question of law. *United States v. Vid-*

aure, 861 F.2d 1337, 1338 (5th Cir.1988), *cert. denied,* 489 U.S. 1088, 109 S.Ct. 1551, 103 L.Ed.2d 854 (1989).

In *Taylor v. United States,* 495 U.S. 575, 110 S.Ct. 2143, 2155, 109 L.Ed.2d 607 (1990), the Supreme Court concluded that it was necessary to define "burglary" as used in § 924(e) independently of the various state definitions of the crime, and defined it as follows: "a person has been convicted of burglary for purposes of a § 924(e) enhancement if he is convicted of any crime, regardless of its exact definition or label, having the basic elements of unlawful or unprivileged entry into, or remaining in, a building or structure, with intent to commit a crime." *Id.,* 110 S.Ct. at 2158. In making this declaration, the Court in *Taylor* clarified that its definition of "burglary" for purposes of § 924(e) was generic and premised upon the most basic elements of the crime. *Id.*

During Silva's sentencing hearing, the Government presented certified copies of Silva's Texas state conviction records evidencing that he had two prior convictions for "burglary of a habitation" and one prior conviction for "burglary of a building" pursuant to Texas Penal Code § 30.02. The court also had a presentence report prepared by a United States probation officer which informed the court of these convictions. Silva argues that none of the documents provided to the district court supports an enhancement of his sentence under 18 U.S.C. § 924(e) because they do not list the elements of the offenses which would classify them as "burglaries" under the statute.[6]

---

5. At the time the offense in this case was committed, § 924(e)(1) provided as follows:

> In the case of a person who violates Section 922(g) of this title and has three previous convictions by any court referred to in Section 922(g)(1) of this title for a violent felony or a serious drug offense, or both, such person shall be fined not more than $25,000 and imprisoned not less than fifteen years, and, notwithstanding any other provision of law, the court shall not suspend the sentence of, or grant a probationary sentence to, such person with respect to the conviction under Section 922(g), and such person shall not be eligible for parole with respect to the sentence imposed under this subsection.

18 U.S.C. § 924(e)(1).

6. Silva appears to argue as well that the Texas burglary statute was not properly offered into the record. This claim is meritless. The Government points out that it had appended a copy of the statute to proposed jury instructions which were submitted to the district court. During sentencing, the Government stated

> the Court can take judicial notice of the fact that the state court burglary meets each and every one of th[e] criteria [enumerated in *Taylor*]. It clearly, under state law, is a[n] entry into a habitation or building with intent to commit theft, and that is what we're looking at in each one of these.

The Supreme Court in *Taylor* stated that "if the defendant was convicted of burglary in a State where the generic definition has been adopted, with minor variations in terminology, then the trial court need find only that the state statute corresponds to the generic meaning of burglary." 110 S.Ct. at 2158. Texas Penal Code § 30.02 punishes anyone who, "without the effective consent of the owner ... enters a habitation, or building ... with intent to commit a felony or theft." Section 30.02 of the Texas Penal Code is a generic burglary statute, punishing nonconsensual entry into a building with intent to commit a crime. Under the reasoning of *Taylor*, Silva's burglary convictions clearly indicate that he was found guilty of all the essential elements comprising generic burglary. Accordingly, Silva's three Texas burglary convictions were sufficient predicate convictions for enhancement of his sentence pursuant to 18 U.S.C. § 924(e).

### III. CONCLUSION

For the foregoing reasons, the judgment and sentence of the district court are AFFIRMED.

As Silva points out, the district court did not explicitly state that it would take judicial notice of this fact. However, since the record before the district court already contained a copy of the Texas burglary statute, the district court had ample evidence before it to find that burglary under Texas law contained the elements required by *Taylor*.