**AMERICAN SAMOA GOVERNMENT, Plaintiff,**

**v.**

**PENIAMINA KOLOSE PINO, Defendant.**

High Court of American Samoa
Trial Division

CR No. 43-97

October 3, 1997

Before KRUSE, Chief Justice, and TAUANU`U, Chief Associate Judge.

Counsel: For Plaintiff, Frederick J. O'Brien, Assistant Attorney General
For Defendant, David P. Vargas, Public Defender

## ORDER DENYING MOTION TO SUPPRESS

### Introduction

On May 10, 1997, defendant, Peniamina Kolose Pino ("Pino"), a juvenile, was arrested and taken into custody accused of the crimes of Murder in the First Degree (A.S.C.A. § 46.3502) and Rape (A.S.C.A. § 46.3604). This court held a hearing regarding Pino's mental condition, and on July 2, 1997, issued an order denying the motion to prosecute Pino as a child.

On August 22, 1997, Pino moved to suppress any and all statements made by him to employees of the Department of Public Safety, claiming that he was seized illegally and that any such statements were neither voluntarily nor knowingly and intelligently made as required by *Miranda v. Arizona,* 384 U.S. 436 (1966). This motion came for hearing on September 15, 1997.

## Discussion

The court finds that the statements Pino made to employees of the Department of Public Safety were not made as a result of an illegal arrest and were made only after he validly waived his *Miranda* rights.

A. Valid "Arrest"

 Detective Sagapolutele's detention of Pino was not an illegal arrest in violation of his constitutional rights. Article I, § 5 of the Revised Constitution of American Samoa parallels the Fourth Amendment to the United States Constitution and provides a safeguard against "unreasonable searches and seizures." This provision of the Revised Constitution of American Samoa is implemented by A.S.C.A. §§ 46.0801-.0807. The statute provides a number of exceptions to the general requirement that a duly issued warrant is necessary for an arrest. Relevant to this case is the provision that:

> A police officer is authorized, and it is his duty, to make an arrest without a warrant, in the following cases: ... (3) of persons found near the scene of a felony and suspected of committing it, where such suspicion is based on reasonable grounds and the arrest follows the crime by a short time.

A.S.C.A. § 46.0805.

 In addition, as the government notes, in its Opposition to Motion to Suppress Statements, the standard for detaining a child[1] or taking a child into custody is found in the Juvenile Justice Act of 1980, A.S.C.A. §§ 45.0201-.0215. Section 45.0201 provides that:

> (a) a child may be taken into temporary custody by a law enforcement officer without order of the court:

---

[1] A "child" is defined as "a person under 18 years of age or a mentally retarded or developmentally disabled person regardless of age." A.S.C.A. § 45.0103(3).

188

(1) When there are reasonable grounds to believe that he has committed an act which would be a felony or misdemeanor if committed by an adult

...

(c) The taking of a child into temporary custody under this section is not an arrest nor does it constitute a police record.

Although the taking of Pino into custody, under the language of the statute concerning children, would not be an arrest, the two statutes do have the common element of "reasonable grounds." "Reasonable grounds," in the context of arrest, is substantially equivalent to "probable cause." *American Samoa Gov't v. Luki*, 21 A.S.R.2d 82, 83 (Trial Div. 1992). Probable cause for a warrantless arrest must exist when the arrest is made, and the government has the burden of showing probable cause. *Id.*, citations omitted. Whether we apply the statutory provision concerning warrantless arrests in general, or the more specific provisions pertaining to detention of children, the requisite reasonable grounds were met in this case.

 When Captain Leuta and Detective Sagapolutele detained Pino, they knew that a woman's body had been found that afternoon on the beach at Aua. They also knew that the woman had drowned, and that doctors had discovered bruising on the woman's neck indicating that she could have been strangled. They knew that the woman had been last seen the previous evening in the *aumaga* shack on the beach and that Pino had been seen in the same area at the same time. One witness had reported seeing Pino swimming in the ocean at the time the woman was last seen. Three of Pino's friends had reported seeing him coming from the ocean, wet and wearing shorts. They reported to the officers that Pino seemed nervous and ignored their invitation to join them. The officers also had spoken with Pino's father, who agreed to find Pino and bring him to the police station so he could be questioned. Prior to meeting the father at the police station the officers encountered Pino. When they mentioned that they wanted to ask him some questions, Pino fled.

This knowledge of the officers, combined with Pino's flight,[2] provided sufficient probable cause for a warrantless arrest under A.S.C.A. § 46.0805 or for the taking of a child into custody under A.S.C.A. § 45.0201. Therefore, Pino's rights against "unreasonable seizure" under the Revised Constitution of American Samoa and the United States Constitution and his rights as enumerated in the warrantless arrest provisions of the American Samoan Code were not violated. The circumstances of his arrest or detention, then, will not serve as a basis to suppress any statements Pino made to employees of the Department of Public Safety.

## B. Waiver of Miranda Rights

 Any confession or statements given to the police must comply with the standard as established in *Miranda v. Arizona*, 384 U.S. 436, 444 (1966), with certain elements that have been modified or clarified over the years. "In essence, if a suspect 'voluntarily, knowingly, and intelligently' waives his right to remain silent and to an attorney, a statement made by a suspect who is in custody is admissible. *American Samoa Gov't v. Gatoloai*, 23 A.S.R.2d 65 (Trial Div. 1992), citing *Miranda*, 384 U.S. at 444. The relinquishment of rights must be voluntary in the sense of being a free and deliberate choice, and knowing and intelligent in the sense of having an awareness of the nature of the right and the consequences of waiving it. *Moran v. Burbine*, 475 U.S. 412, 421, 89 L.Ed.2d 410, 421 (1986). "Only if the 'totality of the circumstances surrounding the interrogation' reveal both an uncoerced choice and the requisite level of comprehension may a court properly conclude that the *Miranda* rights have been waived." *Id.*, citing *Fare v. Michael C.* 442 U.S. 707, 725 (1979). *See also, Colorado v. Spring*, 479 U.S. 564, 573 (1987).

---

[2] *United States v. Holloway*, 962 F.2d 451, 461 (5th Cir. 1992)(holding that defendant's attempt to escape from officers was a sufficient additional factor to push the officers' reasonable suspicion over the threshold of probable cause); *United States v. Silva*, 957 F.2d 157, 160 (5th Cir. 1992)("Although defendant's flight from the officer is insufficient by itself to show probable cause, flight supplies another element to the reasonable suspicion calculus."). *But see United States v. Duffy*, 796 F. Supp. 1252 (D.Minn. 1992)(holding that when defendant chose to ignore officer's request to engage in conversation by running away, officers escalated a lawful attempt to conduct an interview into an unlawful arrest, and therefore evidence obtained in a search incident to the arrest must be suppressed). Although in the present case the officers also approached Pino with the intent to ask him questions, they, unlike the officer in *Duffy*, had additional information which supplied reasonable grounds for arrest or detention.

190

■ The Juvenile Justice Act of 1980 provides a statutory implementation of the *Miranda* principle. Section 45.0204 provides that:

> No statements or admissions of a child made as a result of interrogation of the child by a law enforcement official concerning acts alleged to have been committed by the child which would constitute a crime if committed by an adult are admissible in evidence against that child unless a parent, guardian or legal custodian were advised of the child's right to remain silent, tha[t] any statements made may be used against him in a court of law, of the right to the presence of an attorney during the interrogation, and of the right to have counsel appointed if so requested at the time of the interrogation. ...

■ Based on evidence presented before us at the hearing, we find that Pino's waiver of his *Miranda* rights was voluntary, knowing and intelligent. The evidence presented to us showed that there was no police intimidation, coercion, or deception, even when taking into account Pino's age and level of intelligence. *See, Moran,* 475 U.S. at 421. The testimony that Pino has a testable intelligence quotient equal to a second grader does not establish that Pino could not understand his actions in waiving his *Miranda* rights. *See, e.g., People v. Cheatham,* 453 Mich. 1, 36, 551 N.W.2d 355, 370 (1996)("Low mental ability in and of itself is insufficient to establish that a defendant did not understand his rights.").[3] Also, his inability to read the *Miranda* form does not mean he was unable to understand his rights as they were being read to him. The level of understanding and comprehension with which Pino has interacted with the Department of Public Safety personnel involved in this case and the capabilities he has demonstrated to this court in previous hearings is evidence that Pino had the capability of understanding what he was doing when he waived his *Miranda* rights.

■ Pino claims that there is special scrutiny for the interrogation of a child. The protections afforded children in this jurisdiction are enumerated in the statute quoted above, A.S.C.A. § 45.0204. The statute requires the presence of a parent, guardian, or legal custodian when *Miranda* rights are explained and waived. The presence of a public defender or counsel will also fulfill the requirements of the statute. At the time Pino waived his rights, Pino's father was present, heard the officer recite each section of the *Miranda* form, and signed his name on

---

[3] Cited in Defendant's Memorandum of Point and Authorities in Support of Motion to Suppress Statements. The full text of the case was submitted to the court on August 8, 1997 and is contained in the case file.

the form, next to Pino's signature. The presence of Pino's father and his actions in regard to the *Miranda* waiver form show us that the requirements of A.S.C.A. § 45.0204 have been met.

The statement Pino made before being advised of his *Miranda* rights is not of consequence.[4] It has no bearing on the validity of Pino's verbal statements and written confession made after administration of the *Miranda* warning.

Pino voluntarily, knowingly and intelligently waived his constitutional rights. In addition, the requirements of A.S.C.A. § 45.0204, which provide *Miranda* type protection for children, have been fulfilled. Therefore, the motion to suppress any and all statements made by Pino to employees of the Department of Public Services, is denied.

It is so Ordered.

_____

---

[4] Pino was asked, "Do you know anything about the death of a Chinese woman from Aua?" He replied, "Yes."