**IN THE UNITED STATES COURT OF APPEALS**
**FOR THE FIFTH CIRCUIT**

United States Court of Appeals
Fifth Circuit

**F I L E D**

October 6, 2009

No. 08-61004

Charles R. Fulbruge III
Clerk

UNITED STATES OF AMERICA,

Plaintiff - Appellee

v.

HOWARD EARL JONES,

Defendant - Appellant

Appeal from the United States District Court
for the Southern District of Mississippi
No. 1:07-CR-105-2

Before KING, DAVIS, and BENAVIDES, Circuit Judges.

PER CURIAM:[*]

Howard Earl Jones appeals his conviction for conspiracy to possess with intent to distribute 5 grams or more but less than 50 grams of crack cocaine. We affirm.

## I. BACKGROUND

### A. Summary of the Facts

On November 2, 2006, at ten o'clock in the morning, Renada Davis and his brother, Deadrick Franklin, pulled into the Springwater Street Apartments in

---

[*] Pursuant to 5TH CIR. R. 47.5, the court has determined that this opinion should not be published and is not precedent except under the limited circumstances set forth in 5TH CIR. R. 47.5.4.

Moss Point. They stopped their gold Chevrolet Malibu next to a green Toyota Camry. Howard Earl Jones exited the passenger side of the Camry, leaving his girlfriend inside, and climbed into the backseat of the Malibu to engage in a drug transaction. Two Moss Point police officers, Lieutenant Lamar Underwood and Officer Terrance Gray, were on routine patrol in the area when they saw the Malibu turn into the back of the apartment complex. Because there had been reports of drug transactions in those apartments, the officers followed the Malibu into the parking lot. Officer Gray recognized the occupants of the Malibu as persons involved in drug activity.

As the officers were pulling up behind the stopped Malibu, Jones's girlfriend sped away in the Camry, and Davis began driving the Malibu forward to the end of the parking lot. Officer Gray yelled at them to stop the car. Davis continued driving 20 to 30 feet, then abruptly stopped, exited, and began fleeing on foot. Lieutenant Underwood fired his taser and disabled Davis. Upon seeing Davis run, Jones also exited from the backseat and fled. Lieutenant Underwood again fired his taser, but only one of the probes hit Jones, who escaped. During his flight, Jones dropped a $100 bill to the ground. Franklin remained in the Malibu, where he was arrested after being found with crack cocaine and $2,777 in cash.

During a search of the area, the officers discovered crack cocaine on the ground next to the car door from which Jones had exited, on Franklin's person, and on the ground where Davis had fallen. The drug laboratory later confirmed that the substances recovered were crack cocaine with a net weight of 157.7 grams. A black baseball cap was recovered near Davis's person.[1] The officers

---

[1] Jones now asserts that the black baseball cap was not included on the government's evidence list or introduced at trial, and that it was material to his case. The only relevance of the baseball cap is in determining how much of the 157.7 grams of crack cocaine was in Davis's possession. Because Jones was acquitted of the possession charge, the black baseball cap's absence has no effect on his appeal.

also found a .38 caliber derringer belonging to Davis in the front seat of the Malibu, a black handgun on the floor in the backseat, two digital scales, and a notebook containing names and dollar amounts. The notebook contained an entry for "Man–Man."

At trial, Franklin testified on behalf of the government pursuant to a plea agreement. He testified that the notebook recorded debts owed to Davis. Franklin also testified that the notebook entry for "Man–Man" referred to Jones, and that Jones was seeking to purchase a 63-gram "pie" of crack cocaine. Franklin testified that the scales were used for weighing cocaine powder and crack cocaine. He further testified that Davis had placed crack cocaine into the black baseball cap before exiting the Malibu. With regard to contact with Jones in the past, he testified that Jones had purchased "pies" of crack cocaine from Davis in 2006 but prior to the November incident. Franklin testified that Jones did not pay up front for the crack cocaine, but that Davis "fronted" the pies, and Jones would pay the cost out of his ultimate sales. Davis had died before trial and was unavailable to testify.

The government also called to the stand a Drug Enforcement Agency agent, who testified that the notebook was consistent with a drug ledger. Derrick Hurst, like Franklin, testified pursuant to a plea agreement. Hurst confirmed that Jones went by the nickname "Man–Man," and that he had purchased 28-gram "cookies" of crack cocaine from Jones in 2001. He further testified that Jones's supplier was arrested in 2001, and Jones thereafter had to find a different supplier.

After the government rested its case, Jones testified in his own defense that he was a drug user but that he had not dealt crack cocaine since he was younger. He claimed that he planned to purchase a user amount of crack cocaine from Davis for about $20 or $30, but that the transaction had not been consummated before the police officers arrived at the scene. He claimed that he

had not yet spoken to Davis or Franklin before the police officers disrupted the transaction. His mother testified that she had witnessed the incident and observed small rocks flying out of the Malibu's windows, but that she did not see Jones throw anything while fleeing from the police. Jones's nephew also testified that he did not see Jones throw anything, but that Jones went by the nickname "Man–Man."

## B.    Procedural History

Jones was indicted on three counts. The first count charged him with conspiracy to possess with intent to distribute 50 grams or more of cocaine base (crack cocaine), in violation of 21 U.S.C. §§ 841(a)(1) and 846. The second count charged him with knowingly and intentionally possessing with intent to distribute 50 grams or more of crack cocaine under 21 U.S.C. § 841(a)(1) and 18 U.S.C. § 2. The third count, a notice of forfeiture under 21 U.S.C. § 853(p), was dismissed at the beginning of trial on the government's motion. Franklin was also indicted on the same charges, but he agreed to a plea bargain that required him to testify in Jones's trial.

Jones moved pretrial to suppress the drugs and other evidence obtained from the Malibu as the fruits of an unreasonable search. The district court deferred ruling until trial. At trial, it found that there was no seizure of the Malibu when the officers pulled up behind it, so no probable cause or reasonable suspicion was necessary. The court further determined that the officers had reasonable suspicion to detain the Malibu and its occupants based on the two cars being next to each in an area with high drug traffic, on the Camry speeding away, and on the Malibu driving 20 to 30 feet away from the officers' car. It concluded that when Davis and Jones fled the scene, the officers were justified in seizing them and the evidence at the scene.

Jones moved for a judgment of acquittal when the government rested its case and again at the close of all the evidence. The court denied both motions,

4

and submitted jury instructions relating to the possession and the conspiracy charges. After the jury withdrew to deliberate, it asked additional clarifying questions to the court. The court referred the jury back to the instructions each time. The jury returned a verdict of not guilty on the charge of possession with intent to distribute, but found Jones guilty of conspiracy to possess with intent to distribute five grams or more but less than 50 grams of crack cocaine. The district court denied Jones's motions for judgment of acquittal and new trial[2] and sentenced Jones to 360 months' imprisonment, five years' supervised release, and a $100 special assessment.

Jones now appeals, asserting as grounds for relief error in the denial of his motion to suppress, his motion to dismiss, his motions for judgment of acquittal, and his motion for new trial. He also contends the additional instructions to the jury were confusing or exerted undue influence, leading to an erroneous jury verdict.

## II. ANALYSIS

### A. Motion to Suppress

Jones asserts that the officers unreasonably seized the Malibu and its occupants when the officers approached them in the apartment complex. Jones contends that the officers had no reasonable suspicion or probable cause and that the district court erred in not suppressing the crack cocaine found in the parking lot and the Malibu. The government responds that the initial approach was not a seizure, and that reasonable suspicion and probable cause were not necessary. It argues that Davis's and Jones's conduct after the initial approach gave rise to reasonable suspicion to seize Davis, Jones, and any contraband on

---

[2] The renewed motion for judgment of acquittal was titled as a Motion for Judgment Notwithstanding the Verdict. Both parties regard that motion as a renewed motion for judgment of acquittal, and we will analyze it accordingly.

their persons. Lastly, it claims that Jones lacks standing to challenge the officers' search of the Malibu.

We review de novo a district court's legal conclusions under the Fourth Amendment, and its factual findings for clear error. *United States v. Zavala*, 541 F.3d 562, 573–74 (5th Cir. 2008). A district court's finding that a seizure has or has not occurred is a factual determination that we review for clear error. *United States v. Mask*, 330 F.3d 330, 334 (5th Cir. 2003). "'A factual finding is not clearly erroneous if it is plausible in light of the record as a whole.'" *Zavala*, 541 F.3d at 574 (quoting *United States v. Jacquinot*, 258 F.3d 423, 427 (5th Cir. 2001) (per curiam)). "A district court's legal conclusions, including determinations of reasonable suspicion and probable cause, are reviewed de novo." *Id.* We consider the entire record in the light most favorable to the government, *United States v. Ibarra*, 493 F.3d 526, 530 (5th Cir. 2007), and may affirm on any basis supported by the record, *United States v. Taylor*, 482 F.3d 315, 318 (5th Cir. 2007).

We first address the evidence collected from outside of the Malibu. "[A] person has been 'seized' within the meaning of the Fourth Amendment only if, in view of all of the circumstances surrounding the incident, a reasonable person would have believed that he was not free to leave." *United States v. Mendenhall*, 446 U.S. 544, 554 (1980) (Stewart, J.). A police officer's show of authority does not effectuate a seizure unless the person yields or the officer applies physical force to restrain movement. *California v. Hodari D.*, 499 U.S. 621, 626–28 (1991). Accordingly, items discarded by a fleeing suspect are abandoned and may be seized without reasonable suspicion or probable cause where the suspect has not yet been seized. *Id.* at 629. Once a person has been seized, that seizure is unreasonable unless based on reasonable suspicion that a person has been, is, or is about to be engaged in criminal activity. *United States v. Vickers*, 540 F.3d 356, 360 (5th Cir. 2008). The determination of reasonable suspicion is made "in

light of the totality of the circumstances confronting a police officer, including all information available to the officer at the time of the decision to stop a person." *United States v. Silva*, 957 F.2d 157, 160 (5th Cir. 1992).

Applying these rules, Jones was not seized when the officers initially approached the vehicle; the only issue is whether Jones was seized when he was hit by a single taser probe. In *Silva*, an officer went to a person's residence to execute a felony arrest warrant; Silva was a passenger in the person's truck in the driveway. *Id.* at 158. The officer blocked the driveway with his patrol car, and Silva exited the truck and began to walk away. *Id.* When the officer called for Silva to halt, Silva broke into a run; the officer briefly touched Silva's shoulder before Silva got away, discarding a firearm before ultimately being apprehended by another officer. *Id.* We declined to consider whether the brief touching constituted a seizure, instead holding that discovery in the company of a suspected felon and flight from officers after being ordered to halt created reasonable suspicion justifying seizure of Silva and the firearm. *Id.* at 161.

Here, in addition to the fact that Officer Gray recognized all the occupants of the Malibu as involved in drug activities, the record shows that the apartment complex had been the subject of drug complaints. Furthermore, Jones's girlfriend, Davis, and Jones all fled at the sight of police. *Compare Illinois v. Wardlow*, 528 U.S. 119, 124–25 (2000) (finding reasonable suspicion where "an area [was] known for heavy narcotics trafficking" and the suspect made an "unprovoked flight upon noticing the police"). We agree with the district court that no seizure occurred when the officers initially approached the Malibu, and that the officers had reasonable suspicion for a detention when Davis and Jones fled from the area. Because Jones abandoned the $100 bill and any crack cocaine he may have carried, the police officers were justified in seizing those items of evidence.

We next address the evidence collected from inside the Malibu. The government contends that Jones lacks standing to challenge the seizure of the two firearms, the notebook, the scales, and any crack cocaine seized from within the Malibu. A defendant has standing to contest the validity of a search if a two-pronged test is met: (1) the defendant must "establish an actual, subjective expectation of privacy with respect to the place being searched or items being seized"; and (2) "that expectation of privacy [must be] one which society would recognize as reasonable." *United States v. Kye Soo Lee*, 898 F.2d 1034, 1037–38 (5th Cir. 1990). "Typically, a passenger without a possessory interest in an automobile lacks standing to complain of its search because his privacy expectation is not infringed." *United States v. Roberson*, 6 F.3d 1088, 1091 (5th Cir. 1993). It is clear from this precedent that Jones, as a momentary passenger in a parked automobile, had no expectation of privacy in the Malibu and lacks standing to challenge the evidence seized from the Malibu.

Neither Davis nor Jones was initially seized, and any subsequent seizure was justified by reasonable suspicion. Jones lacks standing to object to the seizure of evidence from the Malibu. The district court did not err in denying Jones's motion to suppress the crack cocaine and drug paraphernalia.

## B. Sufficiency of the Evidence

Jones filed motions for judgment of acquittal at the close of the government's evidence and at the close of all the evidence. He also filed a motion for a new trial after the jury rendered its verdict. He claims error in the denial of these motions. Those motions challenge the sufficiency of the evidence, and we analyze them together.

We review de novo the denial of a motion for judgment of acquittal. *United States v. Bellew*, 369 F.3d 450, 452 (2004). "[O]ur standard of review is whether, viewing the evidence in the light most favorable to the government, a rational trier of fact could have found the essential elements of the offense beyond a

reasonable doubt." *United States v. Greer*, 137 F.3d 247, 249 (5th Cir. 1998). Our review is "highly deferential to the verdict," and we view the evidence "in the light most favorable to the government with all reasonable inferences and credibility choices made in support of a conviction . . . ." *United States v. Redd*, 355 F.3d 866, 872 (5th Cir. 2003) (internal quotation marks omitted). Denial of a motion for a new trial challenging the verdict as against the weight of the evidence is reviewed for abuse of discretion. *United States v. Fuchs*, 467 F.3d 889, 909 (5th Cir. 2006).

To prove conspiracy to distribute a controlled substance, three elements must be proved: "(1) an agreement between two or more persons to violate the narcotics laws; (2) the defendant's knowledge of the agreement; and (3) the defendant's voluntary participation in the conspiracy." *United States v. Thomas*, 348 F.3d 78, 82 (5th Cir. 2003) (internal quotation marks omitted). Jones challenges the first element, asserting the evidence is insufficient to prove there was an agreement. "'An express agreement is not required; a tacit, mutual agreement with common purpose, design, and understanding will suffice.'" *United States v. Lewis*, 476 F.3d 369, 383 (5th Cir. 2007) (quoting *United States v. Infante*, 404 F.3d 376, 385 (5th Cir. 2005)). "[E]ach element of the crime may be established by circumstantial evidence." *Infante*, 404 F.3d at 385. The fact that Franklin and Hurst testified pursuant to plea agreements is a factor that the jury can consider in determining credibility, but it does not disqualify their testimony. *See United States v. Burns*, 526 F.3d 852, 860 (5th Cir. 2008) ("[I]t is up to the jury to judge the credibility of witnesses who receive favorable treatment from the Government to testify.").

We cannot conclude that the evidence was insufficient for a reasonable juror to find a conspiracy. The large quantity of crack cocaine found at the scene, combined with the weighing scales, justified a finding that a large-scale drug transaction was occurring. A reasonable juror could also have found that

Jones was going to receive the crack cocaine on credit, and the $100 was not conclusive of the amount he agreed to purchase. Franklin also testified that Jones had purchased from Davis before, so an agreement may be inferred in the present circumstances even though negotiations had not occurred before police officers arrived at the scene. Several witnesses testified that Jones went by the nickname "Man–Man," a name which was found in Davis's notebook. In light of these facts, we cannot conclude that the jury's verdict was against the weight of the evidence.

## C. Brady Violations

Jones claims the government violated *Brady v. Maryland*, 373 U.S. 83 (1963), and *United States v. Bagley*, 473 U.S. 667 (1985), by failing to provide him with potentially exculpatory evidence in its possession. He claims his due process rights were violated because he was not given access to the handwritten notes from the police interview of Franklin, and because the government failed to preserve the baseball cap recovered at the scene and Davis's gold Malibu. The government responds that none of those items of evidence is material.

We review allegations of *Brady* violations de novo. *Infante*, 404 F.3d at 386. To prevail on a *Brady* claim, Jones must show three things: "(1) the prosecution did not disclose evidence; (2) the evidence was favorable to the defense; and (3) the evidence was material—i.e., there is a reasonable probability that if the government had disclosed the evidence, the result of the proceeding would have been different." *Id.*; *see United States v. Moore*, 452 F.3d 382, 387–88 (5th Cir. 2006) ("A reasonable probability is a probability sufficient to undermine confidence in the outcome." (internal quotation marks omitted)). The government is required to disclose impeachment evidence under *Brady. Bagley*, 473 U.S. at 676.

While on the stand, Franklin testified that Davis had placed crack cocaine into a black baseball cap. He also testified that he told this to a police officer

who had made handwritten notes. Those handwritten notes were subsequently typed into a report, which was furnished to Jones. The typed report specifically referred to the black baseball cap. Jones argued below that the handwritten notes may have differed from the typed report. He now claims that the handwritten notes conflicted with the typed report. Jones does not offer any support for this claim, reducing it to a "vague assertion[ that] do[es] not establish any exculpatory evidence, let alone a reasonable probability that such evidence affected the outcome of the trial." *Moore*, 452 F.3d at 388. Although Jones alleges that the handwritten notes conflicted with Franklin's testimony, he offers no further explanation of what the conflict was or how it would have been material. We do not find a *Brady* violation in such conclusory allegations.

Nor did the government's failure to produce the black baseball cap constitute a *Brady* violation. Jones claims that the cap's absence precluded effective impeachment of the officers as to why they attributed drugs found outside the car to him. However, the crime of conspiracy to possess a controlled substance does not require actual possession of a controlled substance. *See United States v. Ballard*, 586 F.2d 1060, 1065 n.11 (5th Cir. 1978) ("[A] jury may find a defendant guilty of conspiracy without finding her guilty of the substantive crimes which were the objects of the conspiracy."). Jones discussed the cap during closing argument, but those arguments sought to show that Jones never possessed the cap or any crack cocaine the cap might have contained. Those arguments thus relate to the charge of possession with intent to distribute—a charge of which Jones was acquitted—and are not material to the crime of conspiracy—for which he was convicted—which did not require possession of any crack cocaine.

Jones next argues that he was prevented from effectively impeaching the police officers in arguing the suppression issue by not being able to examine the Malibu. He claims that the Malibu's windows were tinted, and thus the officers

could not have known there were three persons inside the vehicle. Whether the Malibu's windows were tinted relates solely to whether the officers had unreasonably seized Jones, Davis, and Franklin; it has no bearing on the crime of conspiracy. In addition, both Jones and Franklin were available to testify to whether the Malibu's windows were tinted, so any error would have been harmless. *See United States v. Garcia*, 917 F.2d 1370, 1375 (5th Cir. 1990) (noting that an alleged *Brady* violation is harmless where "the defense was able to adequately prepare his case"). More importantly, there was no seizure of the vehicle until after Davis and Jones began fleeing, and thus it is irrelevant how accurately the police officers perceived the Malibu's passengers. We find that the Malibu was not material under *Brady*.

Because Jones has not demonstrated that the handwritten notes, the baseball cap, or the Malibu were material to the charge of conspiracy, the district court correctly rejected his claim of error based on a violation of *Brady*.

## D. Jury Instructions

Jones contends that the district court's supplemental instructions to the jury were confusing and exerted undue influence on the jurors' minds, causing them to make a finding of guilt they otherwise would not have made.[3] We perceive no such influence. The court's responses referred the jury back to the original instructions. If anything, the supplemental instructions (together with the original instructions) inured to Jones's advantage by permitting the jury to convict him of the lesser-included offense of conspiracy to possess with the intent to distribute between 5 grams and 50 grams of crack cocaine. Jones's objection to the supplemental jury instructions is without merit.

---

[3] In the portion of his brief relating to the jury instructions, Jones also makes several arguments challenging the sufficiency of the evidence. As we explained above, there was sufficient evidence to convict Jones of conspiracy to possess with the intent to distribute.

## III. CONCLUSION

We conclude that Jones's claims of error are without merit. Accordingly, the judgment of the district court is AFFIRMED.