PER CURIAM.
| TWrit granted; stay denied. The ruling of the district court granting the defendant’s motion to suppress physical evidence and inculpatory statements is reversed, and this matter is remanded to the district court for further proceedings consistent with this opinion.
While conducting surveillance at an intersection, a police narcotics officer observed two men on either side of a street. A sedan approached one of the men and *962 then stopped. The officer observed a hand to hand exchange, in which the man outside the sedan gave money to an occupant of the vehicle in return for an object.
Believing this to be a narcotics transaction, the surveilling narcotics officer contacted his “takedown” team to follow the individual who had been at the intersection and was involved in the hand-to-hand transaction. That individual met up with the defendant-the man standing on the other side of the street. Defendant was holding a paper bag which appeared to contain a beverage can. The two men began walking down the street.
As the takedown team approached, the two men were still alongside each other. Upon seeing the police takedown vehicle, defendant went onto a nearby porch, then 12returned to the yard empty-handed. The takedown team of two officers pulled up beside the men, exited their police vehicle, and stopped the men for questioning.
While the takedown team had been tracking the individual involved in the hand-to-hand transaction, the narcotics officer who originally surveilled the transaction was watching the defendant. The narcotics officer observed the defendant go to the porch, but return without the paper bag he had been carrying. Once at the scene, the narcotics officer directed one of the takedown officers to go to the porch and look for the bag. The takedown officer returned with the bag and viewed its contents, which included a can containing what would later test positive as crack cocaine.
Police advised defendant of his Miranda[1] rights. The defendant expressed a willingness to cooperate with the investigation and advised one of the officers that the crack cocaine was his and that he had . an addiction.
The defendant later moved to suppress the drag evidence, as well as his inculpato-ry statements. The district court granted the motion to suppress, explaining;
The reason they [the police] were there is because they believed some other crime had been committed.
There was no verification that that crime was committed. So, stopping these two people based on the belief that a crime was committed when they didn’t verify that in any form or fashion, there is simply no basis. There was simply no basis to stop them without having verified that a crime, in fact, was committed.
What they [the police] said was they observed a person talking to two people in a car, and they saw what appeared to them to be money transpire [sic], and something else transpired after the money was transferred.
To verify that that was a crime would entail stopping those two people in the car, finding something on them, and then that then justifies everything else, but there is no justification here.
|3“In reviewing the trial court’s ruling on defendant’s motion to suppress, this Court looks to the totality of the evidence presented at the motion to suppress hearing....” State v. Burkhalter, 428 So.2d 449, 455 (La.1983). The purpose of this comprehensive review is to ascertain whether there has been an abuse of discretion. State v. Montejo, 06-1807, p. 21 (La.5/11/10), 40 So.3d 952, 967.
As a preliminary matter, we find that the district court’s reasoning is not responsive to the facts presented. The district court insisted that for police to be justified in following and ultimately stopping the defendant, police were required to stop the sedan that had appeared at the *963 intersection and verify that the sedan contained crack cocaine. Such verification might be required before pursuing an anonymous tip;[2] however, this case does not involve an anonymous tip as police directly observed a hand-to-hand transaction.
Therefore, we find instead that the crux of this matter is whether the police were justified in searching the bag on the porch, which an officer observed the defendant deposit there as police approached. The defendant concedes police could permissibly search the porch if they had probable cause and a warrant exception to conduct a search. Under the totality of the circumstances, such justifications — and others— existed here.
In U.S. v. Silva, 957 F.2d 157, 160 (5th Cir.1992), the court reviewed a defendant’s claim that he was unlawfully stopped when police were executing an arrest warrant on the defendant’s companion. The defendant took flight during his companion’s arrest and later argued that “the mere fact of his flight does not support a finding of reasonable suspicion” for an investigatory stop. Id. During the defendant’s flight, he discarded a firearm, for which he was later criminally charged. | Id., 957 F.2d at 158. The court agreed with the defendant that flight does not per se give rise to probable cause, but held that “flight may ... be considered as a factor in support of a finding of reasonable suspicion.” Id., 957 F.2d at 160. Collecting cases, the Silva court further ruled: “We agree ... that a suspect’s companionship with or propinquity to an individual independently suspected of criminal activity is a factor to be considered in assessing the reasonableness of a seizure.” Id., 957 F.2d at 160-61.
Under Louisiana law, police are authorized “to stop a person in a public place whom he reasonably suspects is committing, has committed, or is about to commit an offense and may demand ... an explanation of his actions.” La.C.Cr.P. art. 215.1.
It is black-letter law that “police suspicions” may legitimately be “based in whole or in part upon the reactions of the suspect in response to the appearance of police in the vicinity.” Wayne R. Lafave, Search & Seizure, § 9.5(g) (5th ed.2012). “Courts have so held when persons already suspected to some degree ‘appeared startled to see the police,’ ... [or] turned to conceal something from the police.... ” Id. (Internal quotations omitted.)
Thus, it was reasonable for police to stop and detain the defendant, based on both his propinquity to the participant in the apparent drug transaction and the defendant’s efforts to conceal the contents of the brown bag he was carrying following the transaction upon spotting the police.
The defendant abandoned the brown bag when he saw a police vehicle approaching; therefore, police were entitled to retrieve it, since there was no expectation of privacy at that point. As established long ago in Hester v. United States, 265 U.S. 57, 58, 44 S.Ct. 445, 68 L.Ed. 898 (1924), where “[t]he defendant’s own acts, and those of his associates, disclosed the jug, the jar and the bottle ... there was no seizure in the sense |Bof the law when the officers examined the contents of each after it had been abandoned,” The instant case, therefore, is distinguishable from Florida v. Jardines, — U.S. -, 133 S.Ct. 1409, 185 L.Ed.2d 495 (2013), on which the defendant relies. In Jardines, the Court found a canine drag search of a porch exceeded the police’s constitutional authority because “the officers learned what they learned only by *964 physically intruding on Jardines’ property to gather evidence” and that was “enough to establish that a search occurred.” Id., 133 S.Ct. at 1417. Here, and in contrast to Jardines, but for the defendant’s own furtive efforts to conceal the evidence and abandon the bag when he saw police, the officers would have had no reason to believe that the bag was connected with criminal activity and, similarly, would have had no reason to go onto the porch.
Although the police here apparently later learned that the porch where the defendant discarded the bag was attached to the defendant’s residence, that fact does not change our analysis. Without doubt, police were entitled to enter the open porch, just as any member of the public could. See State v. Deary, 99-0627 (La.1/28/00), 753 So.2d 200, 201. The question is not, therefore, as defendant characterizes it, whether the defendant gave up his property right by placing the bag on the porch.[3] Instead, it is well-settled that the question is whether the defendant surrendered his expectation of privacy. See State v. Tucker, 626 So.2d 707, 710 (La.1993) (“If ... a citizen abandons or otherwise disposes of property prior to any unlawful intrusion into the citizen’s right to be free from governmental interference, then such property may be lawfully seized and used against the citizen in a resulting prosecution. In this ... case, there is no expectation of privacy... .”). Moreover, the fact that police were | fiapparently unaware at the time that the porch was attached to the defendant’s residence weighs greatly against suppression because there appears to have been no police overreaching. See Herring v. U.S., 555 U.S. 135, 141, 129 S.Ct. 695, 172 L.Ed.2d 496 (2009) (“[T]he exclusionary rule is not an individual right and applies only where it result[s] in appreciable deterrence.”) (internal quotations omitted).
Also, while a warrant is generally required to search a home or its curtilage, “the exigencies of the situation” can “make the needs of law enforcement so compelling that the warrantless search is objectively reasonable under the Fourth Amendment” State v. Lee, 05-2098, pp. 14-15 (La.1/16/08), 976 So.2d 109, 122, quoting State v. White, 399 So.2d 172, 175 (La.1981). To determine whether sufficiently exigent circumstances exist to justify a warrantless search or seizure, the court must “consider the totality of the circumstances and the inherent necessities of the situation at the time.” State v. Warren, 05-2248, p. 10 (La.2/22/07), 949 So.2d 1215, 1224 (internal quotations omitted).
Under the principles just noted, even if one accepts the defendant’s argument that the evidence was not abandoned (abandonment is a situation for which constitutional protections would not apply), the evidence should still not have been suppressed. The series of events witnessed by police provided probable cause to search the bag on the porch. First, police observed the hand-to-hand transaction and watched one of the participants directly join up with the defendant, who had up to that point been standing across the street. Then, police observed the defendant carrying a bag with what appeared to be a can as he walked along with the person just involved in the hand-to-hand transaction. When the police takedown unit approached the defendant, the defendant responded by going to the porch, where he left the bag. Under the totality of these circumstances, we find police had probable cause to |7believe the defendant had involvement in a drug transaction and *965 the exigency of securing and preserving likely narcotics evidence justified the minimal intrusion of entering the porch and viewing the contents of the bag.
Because we have found the police acted lawfully in stopping the defendant and in obtaining narcotics evidence, we likewise find no reason to suppress the defendant’s inculpatory statements made after being advised of his Miranda rights.
JOHNSON, C.J., not signing.
KNOLL, J., concurs in the result for the reasons assigned by Justice Crichton.
HUGHES, J., would deny the writ and assigns reasons.
CRICHTON, J., concurs in the result and assigns reasons.

. Miranda v. Arizona, 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694(1966).

. See, e.g., State v. Robertson, 97-2960, p. 5 (La.10/20/98), 721 So.2d 1268, 1270.

. The defendant urges his placement of the bag on the porch indicates an intent to later return and finish the beverage contained inside the bag.